1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JOSE MORALES, MANUEL CRUZ, and      )   Case No.: 1:09-cv-00704 AWI JLT
     MARIA CRUZ, on behalf of themselves and all )
12   others similarly situated,           )   ORDER GRANTING MOTION FOR
                                          )   PRELIMINARY APPROVAL OF CLASS
13                    Plaintiffs,          )   SETTLEMENT
                                          )
14            v.                          )   (Doc. 27)
                                          )
15   STEVCO, INC., and FAL, INC. (doing business )
     as LUCICH FARMS), and DOES 1-20,     )
16                                        )
                      Defendants.         )
17   _____ )

18         Plaintiffs Jose Morales, Manuel Cruz, and Maria Cruz ("Plaintiffs")[1] filed a motion for

19   preliminary approval of class settlement on October 14, 2011.  (Doc. 27).  By and through this

20   motion, Plaintiffs seek: (1) conditional certification of the settlement class; (2) preliminary approval

21   of the settlement; (3) appointment of Plaintiffs as class representatives; (4) appointment of Stan

22   Mallison and Hector Martinez as class counsel; (5) approval of the mailing of the class notice and

23   related materials; (6) appointment of Simplurius, Inc., as the settlement administrator; and (7)

24   scheduling for final approval of the settlement.  On October 18, 2011, Defendants Stevco, Inc. and

25   _____

26         [1]  In the notice of the of the motion, the parties bringing the matter before the Court are indicated as "Plaintiffs
     Arnaldo Lara, Jose Morales, Manuel Cruz, Maria Cruz, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul
27   Diaz, Paula Leon and Mirna Diaz."  (Doc. 27 at 2).  Likewise, these are the "plaintiffs" named in the settlement agreement.
     (Doc. 28-1 at 2).  However, in the operative complaint, the named plaintiffs are Jose Morales, Manuel Cruz, and Maria Cruz.
28   (Doc. 1).  Accordingly, the term "Plaintiffs" as used in this Order shall indicate *only* the plaintiffs named in the complaint.

1  FAL Inc., doing business as Lucich Farms (collectively, "Defendants") filed a notice of non-

2  opposition to the motion.  (Doc. 30).

3       The Court has considered the proposed settlement between the parties, and the proposed

4  Notice, Claim, and Opt-Out Forms.  On October 31, 2011, the Court heard oral argument and

5  ordered supplemental briefing and an amended Notice to be filed.  For the following reasons,

6  Plaintiffs' motion for preliminary approval of class settlement is **GRANTED**.

7                    **FACTUAL AND PROCEDURAL HISTORY**

8       On March 5, 2004, Arnaldo Lara, Mario Laveaga, Mirna Diaz, Paula Leon, and Raul Diaz,

9  individually and acting for the interests of the general public, initiated an action in the Kern County

10  Superior Court against Rogelio Casimiro, doing business as Golden Grain Farm Labor.[2]  In the

11  Second Amended Complaint filed on September 2, 2005, the following individuals were added as

12  named plaintiffs: Margarito Santiago, Ponciano Santiago, Alejandra Hernandez, Nicolas Paz,

13  Leodegrario Mosqueda, and Angelica Rosales.  In addition, Stevco, Inc., and Lucich Family Farms

14  were named as previously identified "Doe" defendants.  This action was removed to the Bankruptcy

15  Court of the Eastern District of California in December 2005.[3]

16      On September 29, 2008, the Bankruptcy Court approved "Claim 22" filed by the Lara

17  plaintiffs as follows:

18       IT IS HEREBY ORDERED that the Trustee's motion to compromise his objection to
         Claim #22 is approved in part, and denied in part as follows: The Trustee shall
19       segregate $75,000 to be held in full satisfaction of Claim #22. Said monies shall be
         held in an interest-bearing account pending further order of the court.

20
         IT IS FURTHER ORDERED that any party in interest may seek further relief
21       regarding certification of a "claimant class" for Claim #22, appointment of class

22  _____

23       [2] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose
    accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir.
24  1993).  The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice
    may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise
25  Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir.); *see also Colonial Penn Ins. Co. v.
    Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th. Cir. 1980).
26  Therefore,  judicial notice is taken of the original Complaint and the Second Amended Complaint in *Lara, et al v. Casimiro,
    et al.*, Case No. S-1500-CV-252445- SPC, of the bankruptcy proceedings in case number 05-19558-B-7 and of the Court's
27  own records.

28       [3]At that time, the original non-bankrupt defendants, except for Steveco, Inc., were dismissed from the litigation
    without prejudice.  (Case no. 1:06-cv-00028 AWI, Doc. 30 at 2)

                                        2

1    counsel, and distribution of said funds after the district court has fully resolved all
2    class certification issues in the Removed Civil Action.

3    (05-1955-B-7 [Doc. 231])

4         On November 9, 2005, "Doe" plaintiffs initiated an action against table grape growers based

5    in Kern County, including Stevco, Inc.; D.M. Camp & Sons; Marko Zaninovich, Inc.; Sunview

6    Vineyards of California; Guimarra Vineyards Corp.; El Ranch Farms; Castlerock; and FAL Inc.[4]  *See*

7    *Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008).  Plaintiffs were unnamed former

8    and current employees of the defendants.  *Id.* at 1156.

9         Defendants to the *Doe* action, including Stevco, filed motions to dismiss the operative

10   complaint, which were granted by the Court on March 31, 2008.  Likewise, the Court granted

11   motions to sever the action, and the Court required the plaintiffs to file amended pleadings against

12   each defendant to effectuate the severance.  On May 29, 2008, Jose Morales, Manuel Cruz, and

13   Marcia Cruz were named as plaintiffs in the Third Amended Complaint against Stevco.  (*Doe*, Doc.

14   174).  On March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new case number

15   within twenty days to finalize the severance.  (*Doe*, Doc. 237).

16        On April 20, 2009, the named Plaintiffs–Jose Morales, Manuel Cruz, and Marcia Cruz

17   only–filed their complaint against Stevco, Inc., and FAL, Inc., doing business as Lucich Farms.

18   (Doc. 1 at 1).  The complaint alleges:  violation of the Agricultural Workers Protection Act, 29

19   U.S.C. § 1801, *et seq*; failure to pay wages; failure to pay reporting time wages; failure to provide

20   rest and meal periods; failure to pay wages of terminated or resigned employees; knowing and

21   intentional failure to comply with itemized employee wage statement provisions; penalties under

22   Labor Code § 2699, *et seq*; breach of contract; and violation of unfair competition law.  *Id*.  Plaintiffs

23   brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-

24   exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed,

25   by each of the Defendants within the State of California."  *Id.* at 8.

26   _____

27        [4]  For the same reasons set forth in n.2, the Court may take judicial notice of its own records.  Therefore, judicial
     notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, case number 1:05-cv-01417-AWI-SMS.
28

3

1   The parties engaged in mediation with Robert Coviello at Alternative Dispute Resolution

2   Services, Inc., and resolved the matter through the mediator's proposal.  (Doc. 28 at 11).  Thereafter,

3   Plaintiffs filed a motion for preliminary approval of class settlement on October 14, 2011 (Doc. 27),

4   to which Defendants filed a notice of non-opposition on October 18, 2011 (Doc. 30).

5   The Court held a hearing on the motion for preliminary approval of class settlement on

6   October 31, 2011.  The Court ordered Plaintiffs to provide supplemental briefing on (1) why those

7   who are not named plaintiffs should be appointed as class representatives; (2) the claim for up to

8   $7,500 for each class representative, rather than a lesser amount such as $5,000; (3) whether the

9   settlement administrator should conduct a search for class members in Mexico, or if the search

10  should be confined to the United States; and (4) whether any portion of the $75,000 claim approved

11  in the bankruptcy matter (Case No. 05-19558-B-7) would be included in the settlement, and if so,

12  how.  (Doc. 31).  In addition, the Court ordered Plaintiffs to file an amended Notice of Proposed

13  Settlement referring to the $75,000 claim as a potential source that may increase the settlement fund.

14  On November 7, 2011, Plaintiffs filed the supplemental brief (Doc. 34) with a declaration from the

15  proposed settlement administrator regarding the viability of international address searches (Doc. 33).

16  Also, Plaintiffs amended the Notice of Proposed Settlement to include a notice of a request to

17  allocate the bankruptcy settlement funds.  (Doc. 32).

18  **THE PROPOSED SETTLEMENT**

19  Pursuant to the proposed settlement ("the Settlement"), the parties[5] agree to a gross

20  settlement amount of $925,000.  (Settlement, § III.A).  Within thirty days of preliminary approval of

21  class settlement, Defendants agree to make payments totaling $925,000 into an interest bearing

22  account controlled by the Settlement Administrator.  (*Id.*)  Late payments made beyond thirty days

23  are subject to a simple interest increase of 10%.  (*Id.*)

24  **I.  Payment Terms**

25  The settlement fund will cover payments to qualified class members with additional

26  _____

27  [5] Under the terms of the Settlement, the "parties" include Arnaldo Lara, Jose Morales, Manuel Cruz, Maria Cruz,
    Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon, Mirna Diaz, Stevco, and FAL.

28  (Settlement at 1).

4

compensation to class representatives, payments to class counsel for attorneys' fees and expenses, and payment to the settlement administrator.  (Settlement, § III.A-C; Doc. 27-1 at 8).  Specifically, the settlement provides for the following payments from the gross settlement amount:

- Each named plaintiff as a class representative shall receive up to $7,500 each;

- Class counsel will receive no more than 30% of the gross settlement amount for attorneys' fees and $15,000 for expenses;

- The California Labor and Workforce Development Agency ("LWDA") shall receive $25,000; and

- The Settlement Administrator will receive up to $20,000.

(*Id.* at § III.C).  After these payments have been made, the remaining money ("Net Settlement Fund") will be distributed as settlement shares.  (*Id.* at § III.E).

To receive a settlement share from the Net Settlement Fund, a class member must submit a timely and valid claim form.  (Settlement, §§ I.B, III.E).  Settlement shares will be calculated on a pro-rata basis with the following formula: (a) the Claimant's total number of Months of Employment during the Class Period;[6] (b) divided by the aggregate number of Months of Employment of All Authorized Claimants;[7] (c) multiplied by the value of the Net Settlement Fund.  (*Id.* at § III.E). Thus, the exact amount each receives depends upon how many other class members submit timely and valid claim forms.  The entire Net Settlement Fund will be distributed, but if any checks are not cashed, that money will be distributed to a charity of Defendants' choice.  (*Id.* at §§ III.E, III.G(9)). No payment will be made to class members who elect to exclude themselves or who fail to submit a timely and valid claim.  (*Id.* at § III.E(2)-(3)).

For tax purposes, 50% of each settlement share will be deemed wages and is subject to applicable payroll tax, withholding and deductions.  (Settlement § III.E(1)).  In addition, Defendant's share of payroll taxes will be paid from the settlement amount, and the settlement administrator will

---

[6] "Months of Employment" is defined as "the number of calendar months during the Class Period [from March 5, 2000 to January 1, 2005] that the Class Member was an active joint employee of Golden Grain Farm Labor Contractor and Defendants and received a paycheck for such employment . . ."  (Settlement § I.W).  Performing one day of work in a calendar month is sufficient to qualify for settlement proceeds for that month.  (*Id.*)

[7] "Authorized Claimant" is defined as "a Class Member who has submitted a timely and valid Claim Form" pursuant to the terms of the settlement.  (Settlement § I.B).

1   issue Form W-2s.  (*Id.*)  The remaining half of each settlement share is intended to settle claims for

2   interest and other statutory recoveries, for which the settlement administrator will issue each

3   claimant a Form 1099.  (*Id.*)

4   **II.   Releases**

5           The Settlement provides that Plaintiffs and class members, other than those who elect not to

6   participate in the Settlement, at the time final judgment is entered, shall release Defendants from the

7   claims arising in the class period.  Specifically, the release for class members provides:

8           As of the date the Judgment becomes Final, all Class Members who have not filed an
        exclusion shall hereby fully and finally release Defendants, and its parents, predecessors,
9           successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents,
        attorneys, stockholders, fiduciaries, and other service providers, and assigns, from any
10          and all claims, known and unknown, for or related to all claims base on or arising from
        the allegations that they were or are improperly compensated during the Class Period
11          under federal, California, or local law (the Class's Released Claims").  The Class's
        Released Claims include all such claims for alleged unpaid wages, including overtime
12          compensation, missed meal-period and rest-break wages or other statutory recoveries,
        and interest; costs and attorneys' fees and expenses.  The release for Participating Class
13          Members does not reach any claims not directly related to the wage and hour allegations
        in the complaint.

14

15   (Settlement § III.H(2)).  The release for Plaintiffs provides Defendants are released from "all claims

16   arising from or related to the matters alleged in the Action."  (Settlement § III.H(1)).  Therefore, the

17   release for class representatives is broader than that of the class members.  Defendants mutually

18   release Plaintiffs and all other class members of claims related to this action.  (Settlement § III.H(3)).

19   **III.   Objections and Opt-Out Procedure**

20           Any class member who wishes may object or elect not to participate in the Settlement.  The

21   Notice of Proposed Settlement explains the procedures to "claim a share of the settlement, comment

22   in favor of the settlement, object to the settlement, or elect not to participate in the settlement."

23   (Doc. 28-2 at 4).  In addition, the Notice explains claims that are released as part of the settlement.

24   (*Id.* at 7-8).  With the Notice, each class member will receive a claim form that sets forth the dates of

25   employment and an estimate of his or her settlement share.  (*Id.* at 7).

26   ///

27   ///

28   ///

## PRELIMINARY APPROVAL OF A CLASS SETTLEMENT

### I.  Legal Standard

When parties reach a settlement agreement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

### II.  Conditional Certification of a Class for Settlement

Class certification is governed by the Federal Rules of Civil Procedure, which provide that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a).  Under the terms of the Settlement, "the proposed class is comprised of all individuals who have been jointly employed by Defendants and Golden Grain Farm Labor Contractor in California as [a] non-exempt Farm worker during the period from March 5, 2000 through January 1, 2005."  (Doc. 27-1 at 11).  Plaintiffs seek conditional approval of the class for settlement pursuant to Fed. R. Civ. P. 23(c)(1), under which a court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  (Doc. 27-1 at 10) (quoting *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000)).

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

///

7

A.   Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)).  Rule 23(a) requires:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id*.  These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

1.   Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *EEOC*, 446 U.S. at 330.  Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Jordan v. county of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (finding the numerosity requirement was "satisfied solely on the basis of the number of ascertained class members" and listing thirteen cases in which courts certified classes with fewer than 100 members), *vacated on other grounds*, 469 U.S. 810 (1982).

According to Plaintiffs' counsel, Mr. Mallison, "approximately 400-700 former agricultural employees . . . worked between March 5, 2000 and January 1, 2005." (Doc. 28 at 11).  Therefore, the numerosity requirement is met.

2.   Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality "does not mean merely that [class members] have all suffered a violation of the same pro-vision of law," but "claims must depend upon a common contention." *Dukes*, 131 S. Ct. at 2551.  In this case, for purposes of settlement, the parties agree the following common questions of fact and law exist:

- whether Defendants failed to provide farm workers with required meal periods;

- whether Defendants failed to pay farm workers wages for meal periods during which they remained on duty;

- whether Defendants authorized and permitted the farm workers to take required rest periods;

- whether Defendants failed to pay farm workers an additional hour of wages for missed meal periods and rest breaks;

- whether Defendants failed to pay all legally required minimum wages and overtime compensation;

- whether hourly production workers are owed waiting time penalties because Defendants allegedly willfully failed to pay them additional wages for missed meal periods and rest breaks, and for meal periods taken during which they remained on duty, upon the termination of their employment; and

- whether Defendants's business practices violated Business and Professions Code section 17200 *et seq.*

(Doc. 27-1 at 11).  Based upon the stipulation of the parties that these questions of law or fact are shared by the prospective class members, the Court finds this sufficient to satisfy the commonality requirement.

### 3.  Typicality

The typicality requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The standards under this rule are permissive, and a claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of the absent class members.  *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

Review of the Complaint demonstrates Plaintiffs allege they were employed by Defendants during the relevant time period.  (Doc. 1 at 2-3).  The parties agree that the named plaintiffs and class

9

1    members were paid under the same pay practices as every other class member.  (Doc. 27-1 at 11).

2    They agree also that "Plaintiffs' claims are essentially identical with the class as a whole."  (*Id.*)

3    Therefore, the typicality requirement is satisfied.

### 4.   Fair and Adequate Representation

5        Absentee class members must be adequately represented for judgment to be binding upon

6    them.  *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, this prerequisite is satisfied if the

7    "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

8    23(a)(4).  "[R]esolution of this issue requires that two questions be addressed: (a) do the named

9    plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the

10   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re*

11   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

### a.   Proposed class counsel

13       Proposed class counsel, Mr. Mallison and Mr. Martinez, have significant experience

14   litigating wage and hour class action cases and in serving as class counsel.  (*See* Decl. of Mallison,

15   Doc. 28 at 5-7).  Mr. Mallison asserts "neither [he], nor any member of the firm, have any personal

16   affiliation or family relationship with the plaintiffs and proposed Class Representatives. *Id.* at 7.

17   Defendant offers no opposition to the adequacy of counsel and, therefore, the Court finds counsel

18   satisfy the adequacy requirements.

### b.   Proposed class representatives

20       Plaintiffs seek to appoint the following individual as class representatives: Jose Morales,

21   Manuel Cruz, Maria Cruz, Arnaldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago,

22   Raul Diaz, Paula Leon, and Mirna Diaz.  (Doc. 27 at 2; Settlement § I.M).  Mr. Mallison's

23   declaration explains, "The firm chose the proposed class representatives because we believed that

24   they provided good representation of the breadth of the class, both in terms of job categories,

25   geographic locations, and employment status."  (Doc. 28 a 7).  Notably, however, Plaintiffs seek to

26   appoint several individuals from the *Lara* action, who are not identified as plaintiffs in the operative

27   Complaint in this action.

28

Plaintiffs assert in the supplemental brief that Arnaldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon, and Mirna Diaz (collectively, "*Lara* Group") "should be appointed as class representatives because they initiated the class-wide claims in this matter, have participated actively throughout the litigation in both the *Lara* matter and in this related case, and were instrumental in the informal resolution of both the *Lara* matter and this related case." (Doc. 34 at 3). In addition, Plaintiffs assert:

> From the initiation of their action on March 5, 2005, the [*Lara* Group has] sought recovery of wage and penalties on behalf of all similarly situated workers stemming from the alleged wage and hour violated (sic) committed by the now bankrupt farm labor contractor, Defendant Casimiro, and Defendants Stevco, Inc. and FAL, Inc. . . . For two years, the [*Lara Group*] vigorously litigated the claims on behalf of themselves and others against Defendant Casamiro and subsequently against Defendant Stevco in the *Lara* matter, before Defendant Casimiro filed for bankruptcy on October 12, 2005. . . .
>
> On May 8, 2006, the *Lara* [Group] made a Class Claim. . ., which was later amended on June 25, 2007. . . . [Citation]. As a result of their class claims, the *Lara* [Group] successfully recovered $75,000, which should be distributed, in part, to the class in this action. The *Lara* [Group] continued to litigate their claims against Defendant Stevco by moving to withdraw reference of the adversary proceeding (which was originally removed from state court) from bankruptcy to district court, which was granted on June 5, 2006 by Judge Ishii. [Citation].
>
> As is evident from their tenacity, the *Lara* [Group] achieved success in both bankruptcy proceedings and their removed action against Stevco, which deals with the exact same issues in this case. They participated extensively in discovery proceedings, as set forth below, and were involved in the successful resolution of this and the related case.

*Id.* at 3-4 (internal citations omitted). As a result, Plaintiffs conclude the *Lara* Group "fulfilled their duties to the class and should be appointed as class representatives." *Id.* at 4.

Notably, the five individuals who *initiated* the predecessor action in state court were Arnaldo Lara, Mario Laveaga. Raul Diaz, Paula Leon, and Mirna Diaz, who filed their complaint on March 5, 2004. On September 2, 2005, Margarito Santiago and Alejandra Hernandez were identified as plaintiffs, along with four other individuals who Plaintiffs do not seek to appoint as class representatives in this action. Only two months later, the *Doe* action was filed in the district court, and there appears to have been a conscious decision to omit the *Lara* Group as named plaintiffs in the Third Amended Complaint filed against Defendants, which became the operative complaint in this action. On the other hand, at least one plaintiff from the *Lara* action was identified as a named

1   plaintiff after the Court ordered severance in the *Doe* action.  (*See Doe*, Doc. 173) (identifying

2   Angelica Rosales as a plaintiff in the action against El Rancho Farms).

3          Rule 23(a) does not explicitly require that a class representative must be a named plaintiff in

4   the action.  However, a class representative must meet the requirements of Rule 23(a), and have

5   claims that are common and typical among the class.  The recitation of the extensive procedural

6   history of the case–with which the Court was acquainted when it ordered supplemental briefing–

7   does not provide evidence that the *Lara* Group satisfies these prerequisites.  Plaintiffs failed to

8   provide any evidence that the *Lara* Group were proper representatives for claims presented in *this*

9   *specific* action.  Therefore, the Court will not appoint the *Lara* Group as class representatives for

10  purposes of Settlement.

11         On the other hand, for purposes of this settlement only, the Court finds the named plaintiffs

12  are suitable class representatives.  Plaintiffs,  assert "there is no conflict between the named

13  Plaintiffs' claims and those of the other class members."  (Doc. 27-1 at 12).  Further, the claims of

14  the named plaintiffs are aligned with those of the class—to maximize their recovery.  (*Id.*)

15  Therefore, it appears Plaintiffs will fairly and adequately represent the interests of the class.

16         B.   Certification of a Class under Rule 23(b)(3)

17         As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be

18  certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at

19  1266.  Plaintiffs assert, that "parties agree for purposes of the Settlement only that certification of the

20  Class is appropriate under Rule 23(b)(3) because 'questions of law or fact common to the members

21  of the class predominate over any questions affecting only individual members, and . . . a class action

22  is superior to other available methods for the fair adjudication of the controversy.'"  (Doc. 27-1 at 12)

23  (quoting Fed. R. Civ. P. 23(b)(3)).  Accordingly, the Court finds the conditional class is maintainable

24  under Rule 23(b)(3).

25  **III.   Preliminary Approval of the Settlement**

26         Settlement of a class action requires approval of the Court, which may be granted "only after

27  a hearing and on finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P.

28  23(e)(2).  Approval is required to ensure the settlement is consistent with Plaintiffs' fiduciary

1   obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  The

2   Ninth Circuit has set forth a number of factors to determine whether a settlement agreement meets

3   these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of
> further litigation; the risk of maintaining class action status throughout the trial; the
> amount offered in settlement; the extent of discovery completed, and the stage of the
> proceedings; the experience and views of counsel; the presence of a governmental
> participant;[8] and the reaction of the class members to the proposed settlement.

7   *Staton*, 327 F.3d at 959 (citation omitted).  Further, a court should consider whether settlement is

8   "the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

9   at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  In review of the

10  settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact

11  and law which underlie the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291(internal

12  quotations and citation omitted).

13         A.   Strength of Plaintiffs' Case

14         In this action, there are several disputed claims the fact-finder would be required to

15  determine.  Plaintiffs observe, "If the litigation proceeds, Plaintiffs would face significant risk

16  [impacting their] success."  (Doc. 27-1 at 9).  As noted by Plaintiffs, "a primary cause of action in

17  this case revolves around the provision of meal periods."  (*Id.*).  Importantly, meal and rest break

18  claims and employer liability therefor, are currently under review by the California Supreme Court in

19  *Brinker Restaurant Corp. v. Superior Court*.  *See Brinker*, 165 Cal. App. 4th 25 (2008) (review

20  granted).  Thus, the law in this area is uncertain.  Plaintiffs assert that "there is significant risk that

21  legal developments could seriously diminish the value of Plaintiffs' claims" and there is a

22  "substantial risk that Defendants would prevail on its asserted defenses." (Doc. 27-1 at 10).  Given

23  these uncertainties, this factor weighs in favor of preliminary approval of the class action settlement.

24         B.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

25         Approval of settlement is "preferable to lengthy and expensive litigation with uncertain

26  results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If

27

28
        _____

        [8] Because there is no government participant in this action, this factor does not weigh in the Court's analysis.

1  the settlement were to be rejected, the parties would have to engage in further litigation, including re-

2  certification of the class and discovery on the issue of damages.  Plaintiffs observe this could

3  "potentially outweigh[] any additional recovery obtained through successful litigation."  (Doc. 27-1

4  at 10).  On the other hand, the proposed settlement provides for immediate recovery for the class.

5  Therefore, this factor weighs in favor of approval.

6                  C.   Risk of Maintaining Class Status throughout the Trial

7        Plaintiffs acknowledge that even if they demonstrate wage and hour violations by

8  Defendants, "there would be substantial risk the Class would not be certified by the Court."  (Doc.

9  27-1 at 10).  Further, if the Court were to adopt the *Brinker* standard, class certification of for

10  Plaintiff's claims regarding missed meal breaks would be more difficult.  *See Brown v. Federal*

11  *Express*, 239 F.R.D. 580, 585 (C.D. Cal. 2008) (denying class certification of employees alleging the

12  employers denied them meal breaks and rest breaks, and failed to give additional pay to employees

13  who missed meal breaks).  Thus, this factor supports preliminary approval of the settlement

14  agreement.

15                  D.   Amount offered in Settlement

16        The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of

17  absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688

18  F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in

19  settlement, the Court should examine "the complete package taken as a whole," and the amount is

20  "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by

21  the negotiators."  *Id.* at 625, 628.  Here, the proposed gross settlement amount is $925,000.  Mr.

22  Mallison asserts this amount "will not put Defendants' operations at risk or endanger the continued

23  employment of currently employed class members."  (Doc. 28 at 14).

24        Though, generally, orders approving class settlements compare the settlement amount to the

25  total maximum liability estimated by the class counsel, here this information was not provided.  At

26  the hearing in this case, counsel admitted that the significant uncertainty of the state law made any

27  estimate of the total maximum liability mere speculation.  Counsel informed the Court that given

28  these uncertainties and the attendant risk that settled state law would reduce or eliminate all damage

claims, Counsel asserted that the settlement amount here is an overly generous amount.  The Court

accepts these representations as sufficient and finds that the amount offered in settlement supports

preliminary approval of the settlement agreement.

E.   Extent of Discovery Completed and Stage of the Proceedings

Defendants have been litigating this action since 2004, and with the named Plaintiffs since

2005.  In the course of litigation, the parties have "produced a massive amount of documents and

data." (Settlement, § II.D).  According to Plaintiffs,

> After the complaint was filed, Plaintiffs conducted discovery including an extensive set
> of document requests demanding all of the critical payroll and timekeeping information
> at issue in this case, and the names and contact information for Defendants' former and
> current employees.  After meeting and conferring regarding these issues, Defendants
> produced the core payroll and timekeeping information.  Defendants' timekeeping and
> payroll system is heavily paper-based.  Much of the data review required lengthy
> meetings with the plaintiffs, and other witnesses to review the data . . .

(Doc. 27-1 at 4) (internal citations omitted).  Thus, the parties made an informed decision regarding

settlement of the action.  Notably, as early as February 9, 2010, the parties reported they "discussed

mediation and are in the process of moving forward with mediation."  (Doc. 18 at 5).  The parties

moved forward with settlement discussions, and resolved the matter with the assistance of the

mediator, Mr. Coviello.  (Doc. 27-1 at 4).  As a result, this factor supports preliminary approval of

the settlement agreement.

F.   Experience and Views of Counsel

As addressed above, Plaintiffs' counsel are experienced in class action litigation.  Based upon

discovery conducted in the matter, Mr. Mallison asserts that "the terms set forth in the Settlement

Agreement [are] fair, reasonable and adequate," and the settlement is "in the best interest of the

putative class members."  (Doc. 28 at 14).  Likewise, Defendants and their counsel believe the

agreement "reflects a fair, reasonable, and adequate settlement of the [a]ction.  (*See* Settlement

§III.J(3)).  Both parties have weighed the strengths and weaknesses of their respective positions

(Doc. 27-1 at 8), and they endorse this settlement.  This recommendation of counsel is entitled to

significant weight, and weighs in favor of settlement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at

528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted

with the facts of the underlying litigation").

G.   Reaction of Class Members to the Proposed Settlement

Plaintiffs have agreed to the terms of Settlement Agreement.  (*See* Doc. 28-1 at 22-24).  However, because class members have not yet received notice of the settlement, this factor shall be revisited during and after the fairness hearing for final approval of the settlement.

H.   Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  Plaintiffs assert, "The Settlement was reached after informed, arm's length negotiations between the parties.  Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case." (Doc. 27-1 at 8).  The parties utilized an impartial mediator, and the matter was "resolved by means of a mediator's proposal."  (Doc. 28 at 11).  Thus, the agreement is the product of non-collusive conduct.

I.   Attorneys Fees

Class counsel has requested attorneys' fees in the amount of "not more than" 30% of the Gross Settlement Amount. The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  Because the amount of "not more than" 30% of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily.  The Court will determine the exact amount of the fee award upon application by counsel for approval of fees.

J.   Named Representative Enhancement

Class counsel requested a class representative enhancement of $7,500 for each named plaintiff as well as for some class members who were some of the named plaintiffs in the action originally filed in Kern County Superior Court.  The enhancement is to be paid from the Gross Settlement Amount.

Enhancements for class representatives are not to be given routinely. In *Staton*, 327 F.3d at 975, the Court held,

16

Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713, 720 (E.D.N.Y. 1989); see also *Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977

The Settlement explains that the enhancement is to be given to those identified "to compensate them for initiating the Action, performing work in support of the Action, and undertaking the risk of liability for attorneys' fees and expenses in the event they were unsuccessful in the prosecution of the Action." (Doc. 28-1 at 2). Notably, as discussed above, none of the named plaintiffs or putative class representatives "initiated" this action, whether the "initiation" is counted from the complaint in state court or the filing of the *Doe* action. They did not appear as named plaintiffs until the Court ordered the case severed into the individual cases, at which time they appeared as the named plaintiffs here. Moreover, Mr. Mallison's declaration explains, in essence, not that there was any reluctance by Plaintiffs to take on the role of the class representatives, but that his firm chose the proposed class representatives. (Doc. 28 at 7).

Likewise, there is no evidence to support the settlement agreement's explanation that *any* of the named plaintiffs or prospective class representatives have agreed to pay attorneys fees if the case failed. To the contrary, Mr. Mallison's declaration makes clear that this firm took this case on *a contingency fee basis*. (Doc. 28 at 16).

At most, the evidence supports only that these people assisted in the litigation. Mr. Mallison declares that they are deserving of the "incentive award" because they "spent *considerable time* in their efforts on behalf of the class" by assisting the lawyers by "providing us with information, documents, insights, opinions, and necessary decisions." (Doc. 28 at 7). In the supplemental

1   briefing, Plaintiffs explain they "[r]esponded to Interrogatories and Requests for Production of

2   Documents." Though how much time was expended is not explained, Plaintiffs assert a "factual

3   record regarding each of the named plaintiffs will be developed and present upon final approval."

4   (Doc. 34 at 4). In addition, "Plaintiffs' counsel does not know at this time whether the plaintiffs will

5   ask for $2500, $5000, or $7500" in the petition for the final approval and "Plaintiffs' counsel

6   believes that either $5000 or $7500 would conform with recent decision in the Eastern District with

7   similar facts." *Id.* Therefore, the Court finds the flexibility for class representative enhancement *up*

8   *to* $7,500, as phrased in the supplemental briefing, is appropriate.

9                                   **APPROVAL OF CLASS NOTICE**

10          The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which

11   provides the notice "must clearly and concisely state in plain, easily understood language" the

12   following information:

13              (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims,
                issues, or defenses; (iv) that a class member may enter an appearance through an attorney
14              if the member so desires; (v) that the court will exclude from the class any member who
                requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the
15              binding effect of a class judgment on members under Rule 23(c)(3).

16   Fed. R. Civ. P. 23(c)(2)(B). Thus, the class notice must be "reasonably calculated, under all

17   circumstances, to apprise interested parties of the pendency of the action and afford them an

18   opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

19   306, 314 (1950).

20   **I.   Content of the Notice**

21          Plaintiffs have submitted the proposed Notice to the Class ("the Notice"), Claim Form, and

22   Opt-Out Form (collectively "Notice Packet"). Upon review of the proposed Notice Packet, the

23   Court finds the content is adequate. It provides information regarding the background of the action

24   and claims asserted. In addition, the Notice explains the terms and provisions of the settlement,

25   including the payments from the gross settlement fund. The Notice explains the rights and

26   procedures to "claim a share of the settlement, comment in favor of the settlement, object to the

27   settlement, or elect not to participate in the settlement," and will include the applicable deadlines.

28   (Doc. 28-2 at 4). Finally, the Notice Packet will provide an estimate of the class member's share

1   based upon the months of employment by Defendants, and explains the effect of the judgment and

2   settlement.

3         A.  Method and Administration of Notice Packet

4         No later than 14 days after entry of this Order, the parties will provide to the Settlement

5   Administrator a list of the data they have for each class member, including: name; last-known

6   mailing address and telephone number; Social Security number; employee identification number

7   with Defendants, if any; and the class member's months of employment in a covered position,

8   including start and stop months.  (Settlement, § III.G(2)).  This information shall remain confidential.

9   (*Id.*)  Within 10 days of receiving this data, the Settlement Administrator will mail the Notice

10  Packets to all class members.  (*Id.*)  For any Notice Packet returned due to an incorrect address, the

11  Settlement Administrator will search for a more current address and re-mail the Notice Packet within

12  10 days.  (*Id.*)

13        At least 14 days prior to the deadline for submission of Claims Forms, the Settlement

14  Administrator will attempt to contact class members who have not submitted the form and remind

15  them of the deadline.  (Settlement, § III.G(2)).  No later than the date by which the parties file their

16  joint motion for final approval of settlement, the Settlement Administrator will serve the parties and

17  file with the Court a "declaration of due diligence setting forth its compliance with its obligations

18  under [the Settlement Agreement]."  (*Id.*)

19        Class members must submit and postmark their Claim Form to the Settlement Administrator

20  within 45 days of the date on which the Notice Packets are mailed.  (Settlement, § III.G(3)).  If the

21  form is completed improperly or deficient in one or more respect, the Settlement Administrator will

22  return the form within 7 days, and the class member will have 10 days from the date of the deficiency

23  notice to correct and re-submit the form. (*Id.*)  Likewise, class members who elect not to participate

24  in the settlement will have 45 days to complete an Opt-Out Form.  (*Id.*, §III.G(4)).  A class member

25  who completes the Opt-Out Form will not be bound by the Settlement or final judgment.  (*Id.*)

26        Class members who wish to object or comment on the Settlement must serve the parties and

27  file with the Court "a written comment on or objection to the Settlement setting forth the grounds for

28  the comment or objection" within 60 days after mailing of the Notice Packet.  (Settlement, §

III.G(4)).  In addition, the written statement must indicate whether the class member intends to appear at hearing.  (*Id.*)

### B.   Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of the hearing for Final Approval of Class Settlement, and deadlines for Claim Forms, Opt-Out Forms, opposition, comment, or support statements.  Likewise, the Claim Form must be modified to include the relevant information, including the address and phone numbers of the Settlement Administrator.

Further, because the Court denies Plaintiffs' request to appoint the *Lara* Group as class representatives, the Notice Packet must be amended to reflect only Jose Morales, Manuel Cruz, and Maria Cruz as Plaintiffs and class representatives.

## II.  Spanish Language Translation

The Notice refers to a Spanish language translation.  This Court requires a declaration that the Notice was translated by a certified court interpreter and attesting that the translation was an accurate translation of the Court-approved English version of the Notice.  However, no declaration has been provided regarding the Spanish language translation.  Accordingly, the parties shall submit the required declaration no later than five days after the final version of the Notice is approved by this Court.

## APPOINTMENT OF SETTLEMENT ADMINISTRATOR

The parties have agreed upon and propose that the Court appoint Simpluris, Inc., ("Simpluris") to serve as the Settlement Administrator.  According to its corporate biography, Simpluris "focuses exclusively on class action cases."  (Doc. 28-5 at 3).  Simpluris "bid its fees and costs for this Settlement at $20,000 (with a cap of $23,000)."  (Doc. 27-1 at 13).  Under the terms of the proposed agreement, duties of the Settlement Administrator include:

> preparing, printing, and mailing the Class Notice Packet to all Class Members; conducting a National Change of Address search on any Class Notice Packet returned by the U.S. Postal Services as non-deliverable; re-mailing the Class Notice Packet to the Class Member's new address; receiving and reviewing for validity completed Claim Forms and Elections Not to Participate in Settlement; providing the Parties with weekly status reports about the delivery of Class Notice Packets and receipt of completed Claims Forms and Elections Not to Participate in Settlement; providing the Parties with the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

received Claims Forms; calculating Settlement Shares; issuing the checks to effectuate the payments due under the Settlement; issuing the tax reports required under [the] Settlement; distributing any distributed monies to Defendants' designated charity; and otherwise administering the Settlement.

(Settlement, § III.F).  In addition, the Settlement Administrator will have the final authority to result disputes regarding the calculation of a class member's settlement share.  (*Id.*).  Based upon the recommendation of parties and information contained in the corporate biography, Simpluris is appointed as the Settlement Administrator.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement.  Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation,* Second § 30.44 (1985)).  Here, the proposed settlement agreement satisfies this test.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's request for conditional certification of the settlement class is **GRANTED** and the class is defined as follows:

> All individuals who have been jointly employed by Defendants and Golden Grain Farm Labor Contractor in California as non-exempt farm workers during the period from March 5, 2000 through January 1, 2005

2.    Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3.    The propose notice plan is **APPROVED**;

4.    Plaintiffs Jose Morales, Manuel Cruz, and Marcia Cruz are **APPOINTED** as Class Representatives for the settlement class. The request that Arnaldo Lara, Mario

21

Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon and Mirna Diaz be appointed as class representatives is **DENIED**;

5.   Stan Mallison, Esq., and Hector Martinez, Esq., are **APPOINTED** Class Counsel;

6.   Simpluris, Inc. is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

7.   The class representative enhancement request, paid to named Plaintiffs is **GRANTED** preliminarily up to the amount of $7,500, subject to a petition for the enhanced fee award and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8.   Class Counsel's motion for attorneys' fees of not more than 30% of the gross settlement amount plus not more than $15,000 in costs is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9.   The petition for attorneys fees and for class representative enhancement fee **SHALL** be filed no later than **February 10, 2012**;

10.  Costs of settlement administration shall not exceed $20,000;

11.  The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **November 18, 2011**;

12.  Within five days of the Court's approval of the finalized Notice, the parties **SHALL** file a declaration by the certified court interpreter who translated the Notice into Spanish attesting that the translation is an accurate translation;

13.  The parties **SHALL** provide the Settlement Administrator with the records related to class members no later than **November 21, 2011**;

14.  The Settlement Administrator **SHALL** mail the approved Class Notice Packet by first-class mail to class members no later than **December 5, 2011**;

22

15. Any Class Member who submits a timely and valid Claim Form no later than **January 20, 2012** SHALL receive a settlement share;

16. A class member who wishes to be excluded from settlement shall postmark the Opt-Out Form no later than **January 20, 2012**;

17. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to Class Counsel no later than **February 3, 2012**;

18. A Final Approval and Fairness Hearing is SET for **March 7, 2012 at 9:00 a.m**. at the United States Bankruptcy Courtroom located at 1300 18th Street, Bakersfield, California.  At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

19. Class Members may appear at the February 29, 2012 Fairness Hearing in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection. Such comments must be filed with the Court, and mailed to Class Counsel, no later than **February 3, 2012**;

20. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **February 3, 2012**;

21. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and

///
///
///

22. The Court retains jurisdiction to consider all further applications arising out of or in connection to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **November 10, 2011**                                    **/s/ Jennifer L. Thurston**
                                                                          UNITED STATES MAGISTRATE JUDGE