1

2  Stan S. Mallison (SBN 184191)
   Hector R. Martinez (SBN 206336)
3  Marco A. Palau (SBN 242340)
   MALLISON & MARTINEZ
4  1939 Harrison Street, Ste. 730
   Oakland, CA 94612
5  Telephone: 510.832.9999
   Facsimile:  510.832.1101
6  stanm@mallisonlaw.com

7  Attorneys for Plaintiffs

8

9

10                    UNITED STATES DISTRICT COURT
                  UNITED STATES FEDERAL DISTRIC COURT
11                    EASTERN DISTRICT OF CALIFORNIA

12

13  JOSE MORALES et al., on behalf of          CASE NO. 1:09-CV-0704-AWI-JLT
    themselves and all others similarly situated,
14                                             PLAINTIFFS' MEMORANDUM IN
        Plaintiffs,                            SUPPORT OF FINAL APPROVAL OF
15                                             CLASS ACTION SETTLEMENT, CLASS
        vs.                                    CERTIFICATION; CLASS
16                                             REPRESENTATIVE INCENTIVE
    STEVCO, INC. and FAL, INC. (dba            AWARDS; ATTORNEYS FEES AND
17  LUCICH FARMS), and DOES 1-20,              COSTS, CLAIMS ADMINISTRATOR'S
                                               FEES, AND JUDGMENT
18      Defendants.
19                                             Date:       UNDER SUBMISSION
                                               Time:       N/A
20                                             Courtroom:  1300 18th Street, Bakersfield

21                                             Magistrate Judge Jennifer L. Thurston

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................3

    A.   Summary of the Litigation      3

    B.   Settlement Negotiations      4

III.  SUMMARY OF SETTLEMENT TERMS......................................................4

    A.   The Gross Settlement Payment      4

    B.   Payment of Settlement Shares      5

    C.   Distribution of Unclaimed Funds and Uncashed Checks      6

    D.   Scope of the Release  6

    E.   Objections and Opt-Out Process      6

    F.   Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment.      6

IV.   THE TERMS OF PRELIMINARY APPROVAL HAVE BEEN SATISFIED .................7

    A.   The Notice Process was Diligently Carried Out      7

    B.   The Class has Overwhelmingly Accepted the Settlement      8

V.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPIATE ..................................8

    1.   The Strength of Plaintiffs' Case      10

    2.   The Risk, Expenses, Complexity and Likely Duration of Further Litigation 11

    3.   The Risk of Maintaining Class Action Status Throughout the Trial  12

    4.   The Amount offered in Settlement      12

    5.   The Extent of Discovery Completed, and the Stage of the Proceedings      12

    6.   The Experience and Views of Counsel      12

    7.   The Presence of a Governmental Participant 13

    8.   The Reaction of the Class members to the Proposed Settlement      13
         a. Class Representative Reaction      14
         b. Objecting Class Members  14

    9.   The Procedure By Which the Settlement was arrived Supports the Settlement      14

MEMO ISO FINAL. APPRVL. OF CLASS SETTLEMENT
U.S.D.C., E.D. Cal., No. 1:09-CV-0704-AWI-JLT

VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ........................ 15

    A.    The Numerosity Requirement Is Met  15

    B.    The Commonality And Typicality Requirements Are Met   15

    C.    The Named Plaintiffs and Class Counsel Are Adequate Class Representatives        16

    D.    Certification Under Rule 23(b)(3) Is Appropriate For Settlement Purposes  17

VII.    CLASS COUNSELS' REQUESTED FEE AND COSTS ARE REASONABLE . 19

    1.    The Requested Fee is within the Range of Fees Awarded in this Circuit        19

    2.    The Circumstances of This Case Support a 30% Fee Award           20
          a. The Results Obtained          21
          b. The Risks Involved          21
          c. The Skill Required          21
          d. The Quality of the Work     22
          e. The Contingent Nature of the Fee and the Financial Burden          22
          f. Awards made in similar cases          23

    B.    Class Counsel's Request for Costs is also Reasonable          23

VIII.   CLASS REPRESENTATIVE'S ENHANCEMENTS IS ALSO
        REASONABLE ................................................................................... 24

IX.     CLASS REPRESENTATIVES IN CASE 1:06-CV-0028 ("LARA")
        SHOULD BE AWARDED ENHANCEMENTS ......................................... 26

X.      AFTER THIS COURT GRANTS APPROVAL PLAINTIFFS WILL PETITION
        JUDGE ISHII FOR AN ALLOCATION OF BANKRUPTCY FUNDS ................ 28

XI.     THE FEES OF SIMPLURIS INC., SHOULD BE APPROVED ............................. 28

XII.  THE PAGA PAYMENT TO THE STATE OF CALIFORNIA SHOULD BE
        APPROVED ........................................................................................ 29

XIII.   CONCLUSION ................................................................................ 29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591, 620, 117 S.Ct. 2231 (1997) ....................................................................18

*AIA Indus., Inc. Sec. Litig., No. 84-2276*
1988 WL 33883 (E.D. Pa. March 31, 1988)....................................................................19

*Baganha v. California Milk Transport*,
E.D. Cal. Case No. 1:01-cv-05729-AWI-LJO....................................................................20,23

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..............................................................................................19

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268, 1276 (9th Cir. 1992) ..........................................................................8, 9

*City of Detroit v. Grinnell Corp.*,
356 F.Supp. 1380, 1385 (S.D.N.Y. 1972) ......................................................................8

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996)....................................................................................12

*Chalmers v. Electronics Boutique*,
LASC Case No. BC306571 ......................................................................................23

*Chiaramonte v. Pitney Bowes, Inc.*,
2008 WL 510765 (S.D. Cal. 2008) ..............................................................................11

*Church v. Consolidated Freightways, Inc.*,
1993 WL 149840, at *2 (N.D. Cal. May 3, 1993) ............................................................9

*Churchhill Village v. General Electric*,
361 F.3d 566, 575 (9th Cir. 2004) ..............................................................................10

*Cotton v. Hinton*,
559 F.2d 1326, 1330 (5th Cir. 1977) ............................................................................13

*Collins v. Aaron Bros.*,
LASC No. BC 208856 ..........................................................................................23

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
213 F.3d 454, 458 (9th Cir. 2000) ..............................................................................11

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156, 164 (1974) ........................................................................................18

*Gallegos v. Office Depot,*
Santa Clara Sup. Ct., Case No. CV 797847 ....................................................23

*Glass v. UBS Financial Services, Inc.,*
Case No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .......................24

*Gen. Tel. Co. v. EEOC,*
446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) ............................................16

*Gen. Tel. Co. v. Falcon,*
457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ............................................15

*Hanlon v. Chrysler Corp.,*
150 F.3d at 1011 (9th Cir. 1998).............................................................................. *passim*

*Hanrahan v. Britt,*
174 F.R.D. 356, 366-368 (E.D. Pa. 1997) .....................................................................13

*In re Activision Sec. Litig.,*
723 F. Supp. 1373 (N.D. Cal. 1989) ..............................................................................19

*In re AIA Indus., Inc. Sec. Litig.,* No. 84-2276,
1988 WL 33883 (E.D.Pa. March 31, 1988) ...................................................................19

*In re Armored Car Anti-Trust Lit.,*
472 F.Supp. 1357, 1367 (N.D. Ga. 1979)
*aff'd. in part and rev'd. in part on other grounds,* 645 F.2d 488 (5th Cir. 1981). .............9

*In re Corrugated Container Anti-Trust Lit. II,*
659 F.2d 1322, 1325 (5th Cir. 1981) ...............................................................................8

*In re GNC Shareholder Litig.,*
668 F. Supp. 450 (W.D. Pa. 1987).................................................................................23

*In re N. Dist. of Cal., Dalkon Shield, Etc.,*
693 F.2d 847, 856 (9th Cir. 1982) .................................................................................17

*In re Omnivision Technologies, Inc.,*
2008 WL 123936 (N.D. Cal, January 9, 2008)................................................................10

*In re Painewebber Ltd. P'ships Litig.,*
171 F.R.D. 104, 125 (S.D.N.Y. 1997) ............................................................................12

*In re Playmobil Antitrust Litig.,*
35 F.Supp.2d 231, 239 (E.D.N.Y. 1998) ........................................................................15

*In re Portal, Inc. Securities Litigation,*
2007 WL 4171201 (N.D. Cal. 2007) ..............................................................................10

*In re Sumitomo Copper Litig.,*
74 F. Supp. 2d 393 (S.D.N.Y. 1999) ..............................................................................21

*In re United Energy Corp. Sec. Litig.,*
1989 WL 7321 1 (C.D. Cal. 1989)..................................................................................23

*In re Warfarin Sodium Antitrust Litig.,*

391 F.3d 516, 527 (3d Cir. 2004) ...............................................................................17, 18

*In re Warner Communications Sec Litig.*,
618 F Supp 735, 745 (S.D.N.Y. 1985) *aff'd* 798 F.2d 35 (2d Cir. 1986) ........................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
720 F. Supp. 1379, 1387 (D. Ariz. 1989) ..........................................................................9

*lngram v. The Coca-Cola Company*,
200 F.R.D. 685 (N.D. Ga. 2001)......................................................................................24

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. 2009) ..................................................................................19

*Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*,
544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080 (2005) ............................................10

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234, 1238 (9th Cir. 1998)  ..........................................................................9, 12

*Lucas v. Kmart Corp.*, 234 F.R.D.
688, 695 (D. Colo. 2006) .................................................................................................10

*Officers for Justice v. Civil Srv. Comm'*
688 F.2d 615, 625 (9th Cir. 1982) ............................................................................. *passim*

*Oppenlander v. Standard Oil Co. (Ind.)*,
64 F.R.D. 597 (D.Colo. 1974) .........................................................................................11

*Pac. Enters. Sec. Litig.*,
47 F.3d 373, 378 (9th Cir. 1995)  ....................................................................................13

*Power v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) .........................................................................................19

*Randall Willis, et al. v. Cal Western Transport* and
*Earl Baron, et al. v. Cal Western Transport*,
E.D. Cal. Coordinated Case No. 1:00-cv-05695......................................................20,23

*Ratner v. Bennett*,
No. 92-4701, 1996 WL 243645, *5 (E.D. Pa. May 8, 1996) ............................................13

*Reed v. Gen. Motors Corp.*,
703 F.2d 170, 174 (5th Cir.1983)  ...................................................................................14

*Rosario v. Livaditis*,
963 F.2d 1013, 1018 (7th Cir. 1992)  ..............................................................................16

*Santos v. Camacho*,
2008 WL 1699448 (D. Guam, April 10, 2008)................................................................11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...........................................................................................19

*Power v. Eichen*,

229 F.3d 1249 (9th Cir. 200) .................................................................19

*Six Mexican Workers v. Arizona Citrus Growers,*
904 F.2d 1301 (9th Cir. 1990) ..............................................................20

*Van Bronkhorst v. Safeco Corp.,*
529 F.2d 943, 950 (9th Cir. 1976) ...........................................................8

*Van Vranken v. Atlantic Richfield Co.,*
901 F. Supp. 294 (N.D. Cal. 1995).........................................................24

*Vasquez v. Aartman,*
E.D. Cal. Case No. 1:02-cv-05624-AWI-LJO .......................................19,23

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir.2002) ...............................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96, 116 (2d  Cir. 2005).............................................................10

*Whiteway v. FedEx Kinkos Office & Print Services, Inc.,*
No. C 08-2320 SBA, 2007 WL 4531783 (N.D. Cal. Dec. 17, 2007) ...............25


**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rule of Civil Procedure 23 ....................................................... *passim*


**STATE CASES**

*Arias v. Sup. Ct* (2009)
46 Cal.4th 969 ...................................................................................13

*Chalmers v. Electronics Boutique,*
LASC Case No. BC306571 ...................................................................23

*Collins v. Aaron Bros.,*
LASC Case No. BC208856 ...................................................................23

*Gallegos v. Office Depot,*
Santa Clara Sup. Ct. No. CV 797847......................................................23

*Walgreens Overtime Cases,*
JCCP No. 4387 ..................................................................................23


**OTHER AUTHORITIES**
**Treatises & Practice Guides**

*Manual for Complex Litigation*, Third § 30.42 (1995) ..................................... *passim*

*Manual for Complex Litigation*, Third § 30.44 (1995) ....................................13

*Manual for Complex Litigation, Fourth* (4th ed. 2004) ("*Manual*") § 21.632-34 ................ *passim*
NEWBERG ON CLASS ACTIONS, (4TH ED. 2007) § 14.6

*Moore's Federal Practice* § 23.85 (Matthew Bender 3d. ed.) .................................................10, 13

7B Charles Alan Wright et al., *Federal Practice & Procedure* § 1797.5 (3d ed. 1998) ...............9

*Newberg on Class Actions* § 11.41 (Alba Conte & Herbert B. Newberg eds., 4th ed. 2002 & Supp. 2008) .......................................................................................................................... *passim*

**I.      INTRODUCTION**

Plaintiffs ("Plaintiffs") and Defendants Stevco Inc. and FAL, Inc. (dba Lucich Farms) (hereinafter collectively "Stevco"), have agreed to present this proposed wage-and-hour class action settlement[1] ("Settlement") for approval. The Settlement amount, $925,000 has already been paid in full by Defendant Stevco.  The Settlement covers all Settlement Shares to be paid to Class Members who submit valid claims; the employer share of payroll taxes on Settlement Shares; the Settlement Administrator's reasonable fees and expenses of $20,000; enhancement payments of $7500 to Plaintiffs in both related class action case of $7500, payment to the State of California for $25,000, payment to Class Counsel of their reasonable attorneys' fees of 30% of the total settlement value, and expenses not to exceed $15,000.  The Settlement covers all of Defendants' non-exempt workers in California during the time period from March 5, 2000 until January 1, 2005.  There are over 400 Class Members of which there have been 119 valid claims made. Tittle Dec. ¶11.  If this settlement is approved the average claim will be approximately $4300.

The settlement is non-reversionary.   If approved, the entire Settlement payment will be distributed as indicated above.  Pursuant to the settlement agreement, the unclaimed settlement shares will be redistributed on a pro rata basis to the Class Members who have made claims.  In the unlikely event that a class member makes a claim (which would include verifying the claimant's address), *and* has that claim approved by the claims administrator, *and* has a check mailed to them, *and* fails to cash that check even after reminder notices, these uncashed check amounts will be donated to charity.  Given the nature of the process at issue—with claimants requesting and receiving checks but not cashing them—Plaintiffs' counsel does *not* anticipate that the monies relating to these uncashed checks is likely to be substantial.  The settlement is pro-rata with all net settlement proceeds distributed to actual claimants.  There are 119 claimants in this case.[2]  There have been no objections and only four opt-outs (less than 1% of the class). Tittle Decl. ¶15.

---

[1]       Exhibit 1 to the Declaration of Stanley S. Mallison (hereinafter "Mallison Decl, Ex 1, §III.A.")

[2]  The claims administrator is still resolving numerous minor disputes regarding the length of employment of certain applicants but not the overall validity of their underlying claims.  However, the deadline for new applicants has closed and Plaintiffs' counsel anticipates that all such disputes will be resolved within the next couple of weeks.

Defendants have fully satisfied the obligations under the settlement agreement by paying $925,000 into the Tax Qualified Settlement Fund under the control of the Claims Administrator. Tittle Decl. ¶6. As such, all of the settlement money is now available for distribution and can be paid promptly after this court's order approving the settlement.[3]

The Settlement is non-reversionary to Defendants and, if approved, the entire Settlement payment will be distributed as indicated above. In the event of unclaimed settlement shares the residue will be redistributed on a pro rata basis to the Class Members who make claims. In the unlikely event that a class member makes a claim (which would include verifying the claimant's address), AND has that claim approved by the claims administrator, AND has a check mailed to them, AND fails to cash that check even after reminder notices and a reminder call is made, these uncashed check amounts will be donated to a charity as described in the settlement. Mallison Decl. Ex 1, §III.G.9. Given the nature of the process at issue – claimants requesting and receiving checks but not cashing them - Plaintiffs' counsel does not anticipate that the monies relating to these uncashed checks is likely to be substantial.

The Settlement represents informed, closely-negotiated compromises on both sides. The Settlement was reached after an extensive production to Plaintiffs by Defendants of nearly 20,000 pages of relevant payroll and timekeeping documents, and extensive negotiations in front of renowned Mediator Robert Coviello. The settlement reflects the terms of a mediator's proposal made by Mr. Coviello based on a detailed knowledge of the issues present in this action. Plaintiffs and Plaintiffs' counsel are convinced that the Settlement is the best possible recovery under the circumstances, and in the best interest of Class Members.

Specifically, counsel for Plaintiffs balanced the terms of the Settlement, including both the Settlement amount and the benefits conferred to Class Members by the Settlement, against the probable outcome of a wide range of issues at trial. Counsel for Plaintiffs carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendants, the difficulties of complex litigation, the lengthy process of establishing specific damages,

---

[3] As described below, if this court grants final approval, Plaintiffs intend to petition the Judge Ishii for an allocation of additional settlement funds in the related bankruptcy case to supplement the above payments.

the difficulty in fully analyzing and utilizing the evidence at issue in this case, new legal decisions affecting pivotal issues in the case or the pendency of such issues before the California Supreme Court, class certification issues, and other various possible risks and delays. Counsel also considered the current economic climate in the agricultural industry at issue in this case. Plaintiffs' counsel notes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members. Further litigation or trial of the matter would substantially delay any compensation to Class Members.

As discussed below, the Settlement satisfies the criteria for final settlement approval under Federal law and falls well within the range of proper approval. Accordingly, the Plaintiffs move the Court for an order certifying the settlement class, granting final approval of the Settlement, approving Class Representative incentive payments, approving Class Counsel fees and costs, approving the Settlement Administrator fees, and granting judgment.

Class Counsel's request for an award of attorneys' fees is reasonable and appropriate in light of the outstanding work performed by experienced Class Counsel, which included Mallison & Martinez, Weinberg Roger and Rosenfeld, and Milberg LLP, the contingent nature of this action, and the results achieved under the Settlement. Mallison Decl. at ¶¶52-57; Westerman ¶6; Rich ¶12. Class Counsel's request for $15,000 in costs is also reasonable all costs incurred were necessary to litigate this case and is less than the total amount of actual costs in this case. Mallison Decl.¶¶58-59; Westerman Decl. ¶8; Rich Decl. ¶13. The vast majority of these costs revolve around the payment of mediators, scanning costs, travel costs, expert fees, and the costs of research and discovery. *Id*.

II.     **STATEMENT OF FACTS**

A.      **Summary of the Litigation.**

This case involves two wage-and-hour class actions brought on behalf of agricultural field workers employed by Defendants in the Central Valley in the harvest of table grapes.[4] These actions is

---

[4] Declaration of Stan S. Mallison in Support of Motion for Order: (1) Conditionally Certifying Settlement Class and Collective Action; (2) Preliminarily Approving Class Settlement; (3) Appointing Class Representatives and Class Counsel; (4) Approving Class Notice and Related Materials; (5) Appointing Settlement Administrator; and (6) Scheduling Final Approval Hearing ("Mallison Decl."), ¶2. (hereinafter "Mallison Decl. ¶¶2).

brought on behalf of Plaintiffs and several hundred former non-exempt employees of Defendants for alleged violations of federal and state wage-and-hour laws.  Mallison Decl. ¶¶19-31. Plaintiffs allege that Defendants failed to pay overtime and minimum wages; failed to pay wages due at termination of employment; failed to reimburse expenses; failed to provide all legally required meal periods and rest breaks; and failed to provide accurate, itemized employee wage statements.  Plaintiffs sought to certify a class composed of themselves and similarly situated individuals and to recover back wages, interest, penalties, and attorneys' fees and costs from Defendants.

After the initial complaints were filed, Plaintiffs conducted discovery including an extensive set of document requests demanding all of the critical payroll and timekeeping information at issue in this case, and the names and contact information for Defendants' former and current employees.  Mallison Decl. ¶32.  After meeting and conferring regarding these issues, Defendants produced the core payroll and timekeeping information.  Mallison Decl., ¶32.  Defendants' timekeeping and payroll system is heavily paper-based. Mallison Decl. ¶33. Much of the data review required lengthy meetings with the plaintiffs, and other witnesses to review the data to ensure that Plaintiffs' analysis accurately reflected the evidence obtained and reasonably estimated the dates in this case. *Id.*

**B.     Settlement Negotiations.**

This case was resolved through the efforts of Mediator Robert Coviello attended by counsel and the plaintiffs from both related cases. Mallison Decl. ¶35; *See* Morales Decl ¶5*;* Manuel Cruz Decl. ¶5; Maria Cruz Decl. ¶5; Lara Decl. ¶5; Laveaga Decl. ¶5; Santiago Decl. ¶5; Diaz Decl. ¶5; Leon Decl. ¶5; and Diaz Decl. ¶5.  The Settlement covers several hundred former agricultural field employees who worked between March 5, 2000 and January 1, 2005 and provides substantial recovery for class members. Mallison Decl. ¶35; Settlement §III.A.

**III.    SUMMARY OF SETTLEMENT TERMS**

**A.     The Gross Settlement Payment.**

Under the Settlement, Defendants have made a Gross Settlement Payment totaling $925,000. Settlement §III.A.  This payment covers Settlement Shares to be paid to 119 Class Members who submitted valid claims (more than $4300 average per claimant); any payroll withholding on the

Settlement Shares; the Settlement Administrator's reasonable fees and expenses of $20,000; $25,000 payment to the State of California pursuant to the Private Attorney General Act; payments to Plaintiffs, in addition to their Settlement Shares, of $7,500 each in compensation of their services as Class Representatives and payments to Class Counsel of no more than 30% of the gross settlement amount for their reasonable attorneys' fees and $15,000 in expenses incurred in investigating the case, prosecuting the case, preparing for and negotiating at the mediation, documenting the Settlement, securing approval of the Settlement, and related tasks. Settlement §III.A-C.  There will be no reversion of the Gross Settlement Payment to Defendants. Settlement § III.E.

**B.     Payment of Settlement Shares.**

After the other amounts are deducted, the Gross Settlement Amount (then called the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims (Settlement § III), based upon the following allocation formula:

> The pro-rata Settlement Share for each Authorized Claimant will be calculated as follows: (a) that Claimant's total number of Months of Employment during the Class Period; (b) divided by the aggregate number of Months of Employment of all Authorized Claimants; (c) multiplied by the value of the Net Settlement Fund.

Settlement § III.E.  The primary benefit of this formula is that it relies upon objective evidence of the term of employment, which Class Members can easily review and confirm for themselves.  Mallison Decl. ¶38.   This information is readily available from Defendants' records, and the Settlement Administrator can apply the formula in a fair and transparent manner.  Mallison Decl. ¶38.

Plaintiffs' counsel has reviewed this method of distribution and has determined that, on the whole, it serves the purpose of providing a simple and readily determinable method for distribution, while also allowing for a distribution that corresponds closely to the alleged damages and likely recoveries, which are based upon various theories of liability.  Mallison Decl. ¶39.  Plaintiffs' counsel considered other, more complicated methods, but determined that although these methods have some merit, that they were not without controversy and would likely lead to a myriad of objections regarding their formulation and implementation. *Id.*  The formula employed in the Settlement is commonly used in wage-and-hour cases, and is appropriate in this case, where most workers experience the same working conditions and have similar claims that roughly correlate with the number of hours that they have worked.  *Id.* Further, although their might be marginally better theoretical methods for calculating

1   allocations amongst class members, the costs of obtaining and processing the information necessary and

2   to make such calculations would likely outweigh any benefits of using a more complex calculation

3   method.   The above method is simple, efficient, and uncontroversial and should be approved by the

4   court.

5     **C.  Distribution of Unclaimed Funds and Uncashed Checks.**

6      In the event that not all Class Members submit claims, the residue will be redistributed to those

7   Class Members who do submit valid claims.   Settlement, § III.E.   The settlement agreement provides

8   that that in the event that checks issued to Class Members are not cashed, these monies will be donated

9   to charity.   *Id.*, § III.G.9.

10     **D.  Scope of the Release.**

11      The scope of the release by Class Members (all Class Members other than those who elect not to

12   participate in the Settlement) tracks the scope of Plaintiffs' allegations:

13       As of the date the Judgment becomes Final, all Class Members who have not filed an
    exclusion shall hereby fully and finally release Defendants, and its parents, predecessors,

14       successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents,
    attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all

15       claims, known and unknown, for or related to all claims based on or arising from the
    allegations that they were or are improperly compensated during the Class Period under

16       federal, California, or local law (the "Class's Released Claims"). The Class's Released
    Claims include all such claims for alleged unpaid wages, including overtime

17       compensation, missed meal-period and rest-break wages or other statutory recoveries,
    and interest; and costs and attorneys' fees and expenses. The release for Participating

18       Class Members does not reach any claims not directly related to the wage and hour
    allegations in the complaint.

19

20   Ex 1 § III.H.2.   Defendants mutually release Participating Class Members of any wage related claims.

21   The release for the class representatives is broader and encompasses all claims known or unknown.

22     **E.  Objections and Opt-Out Process**

23      Any Class Member who so wishes may object to or comment on the Settlement; or elect not to

24   participate in the Settlement.   The Class Notice fully explains the objection/comment and opt-in

25   procedures.   Settlement, § III.G.4.

26     **F.  Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class
    Counsel Litigation Expenses Payment.**

27

28      By this motion Plaintiffs and their counsel will seek (and Defendants have agreed not to oppose),

1   awards to Plaintiffs of Class Representative Payments of $7,500 each, in addition to their Settlement

2   Shares, in compensation for their services as Class Representatives; and awards to Class Counsel of a

3   Class Counsel Attorneys' Fees Payment of not more than 30% of the Gross Settlement Amount and a

4   Class Counsel Litigation Expenses Payment of not more than $15,000.  Settlement § III.C.1-2.

5   **IV.     THE TERMS OF PRELIMINARY APPROVAL HAVE BEEN SATISFIED**

6           On November 10, 2011, this Court granted preliminary approval of the Settlement, conditionally

7   certified the Class, ordered that the Class be sent notice of the Settlement and approved the form of

8   notice proposed by the parties, approved the forms of claims for settlement share and election not to

9   participate, and set the hearing for final approval.  The claims administrator has carried out this Court's

10  order. See Declaration of Krista Tittle in Support of Joint Motion for Final Approval of Class Action

11  Settlement (hereinafter "Tittle Decl.").  As noted in Ms. Tittle's declaration, it was difficult to reach a

12  substantial portion of the class members who are migrant farmworkers.  Despite this some 119 claims

13  (23.15%) were received and accepted by the Claims Administrator.  Tittle Decl. ¶12.  A large number of

14  these claims came from the extra efforts of counsel and community organizations who helped publicize

15  the settlement.  This figure is reasonable given the nature of workforce at issue in this case.

16

17          **A.      The Notice Process was Diligently Carried Out.**

18          The procedures for giving notice to the class members, as set forth in the Settlement and ordered

19  in the Court's Preliminary Approval Order, have been fully and properly carried out.  Tittle Decl. ¶¶3-

20  19.  The Court directed that the proposed Notice of Certification of Settlement Class and Collective

21  Action, Proposed Settlement and Hearing Date for Final Court Approval (the "Class Notice") and the

22  forms of Claim for Settlement Share and Election Not to Participate in Settlement (referred to in

23  conjunction with the "Class Notice" as "Notice Packets") be sent to class members in the manner

24  specified by the Settlement.  On December 28, 2011 class Notice Packets were mailed to 428 class

25  members with a known address. *Id.*, ¶9.

26          The U.S. Postal Service returned 153 Notice Packets to the Settlement Administrator. *Id.*, ¶11.

27  Best efforts to trace these individuals and/or find their updated addresses were conducted and the

28  Settlement Administrator remailed 147 class notice packets. *Id.*, ¶11.  On February 6, 2012, Simpluris

1    mailed out 366 reminder notices to class members who had not yet responding to the initial notice. Id.,

2    ¶13.

3         **B.**    **The Class has Overwhelmingly Accepted the Settlement.**

4         As of the deadline for to submit claims or elect not to participate 119 class members, or 23.15%,

5    of the class members have submitted accepted claims.  Tittle Decl., ¶12.  Although there remain

6    considerable issues with regards to the length of employment for many of the claimants, these issues

7    should be resolved by the claims administrator promptly.  There were four individuals submitted

8    elections not to participate. Tittle Decl., ¶15.  .  There have been four opt-outs.  Tittle Decl., ¶16.

9    Notably, *no class member has submitted an objection to the Settlement. Id*.  Tittle Decl., ¶17.

10

11   **V.**    **FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

12        The law favors voluntary settlement of disputes, particularly in class actions and other complex

13   cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal

14   litigation. *Officers for Justice v. Civil Srv. Comm'*, 688 F.2d 615, 625 (9th Cir. 1982); *Class Plaintiffs v.*

15   *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950

16   (9th Cir. 1976); *and* 4 Timothy Eble et al., *Newberg on Class Actions* § 11.41 (Alba Conte & Herbert B.

17   Newberg eds., 4th ed. 2002 & Supp. 2008) (and cases cited).  Indeed, settlement of complex cases

18   contributes greatly to the efficient utilization of scarce judicial resources and achieves the speedy

19   resolution of justice, for "[a] just result is often no more than an arbitrary point between competing

20   notions of reasonableness."  *In re Corrugated Container Anti-Trust Lit. II*, 659 F.2d 1322, 1325 (5th Cir.

21   1981).

22        Pursuant to Federal Rule of Civil Procedure 23(e), "[A] class action shall not be dismissed or

23   compromised without the approval of the Court. . . ."  District courts are afforded broad discretion in

24   determining whether to approve a proposed class action settlement.  Indeed, "evaluation of [a] proposed

25   settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations

26   and rough justice," and the trial court's ruling on the adequacy of a proposed compromise is given great

27   deference.  *City of Detroit v. Grinnell Corp.*, 356 F.Supp. 1380, 1385 (S.D.N.Y. 1972), *aff.'d in part and*

28   *rev.'d in part on other grounds*, 495 F.2d 448 (2d Cir. 1974).  Although the court possesses "broad

discretion" in determining that a proposed class action settlement is fair, the court's role "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks and citation omitted). Accordingly, the court should give due regard to what is otherwise a "private consensual agreement" between the parties. *See id.*; *Church v. Consolidated Freightways, Inc.*, 1993 WL 149840, at *2 (N.D. Cal. May 3, 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992); *and Manual for Complex Litigation*, Fourth, § 21.61 at 309 ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement."). A court's approval of a class action settlement will only be reversed for a clear abuse of discretion. *See Officers for Justice*, 688 F.2d at 626 ("[W]e reverse only upon a strong showing that the district court's decision was a clear abuse of discretion"); *and City of Seattle*, 955 F.2d at 1276; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

On a motion for final approval of a class action settlement, a court's inquiry is whether the settlement is "fair, adequate and reasonable." Fed. R. Civ. Pro. 23(e)(1)(C); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation*, Fourth, § 21.6 at 309.

In conducting this analysis, however, the district court should not require the proponents of a settlement in a class action to stage a mini-trial on the merits, the very event that settlement aims to preclude. *See In re Armored Car Anti-Trust Lit.*, 472 F.Supp. 1357, 1367 (N.D. Ga. 1979), *aff'd. in part and rev'd. in part on other grounds*, 645 F.2d 488 (5th Cir. 1981).   Moreover, the Court should not seek to substitute its judgment of what is fair for that reached by the parties in their arm's-length negotiations. *See* 7B Charles Alan Wright et al., *Federal Practice & Procedure* § 1797.5 (3d ed. 1998); *see also Manual for Complex Litigation*, Fourth, § 21.61 at 309.

Where adversarial negotiation by capable counsel is evident, it is presumed that the resulting

9

class settlement is fair.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d  Cir. 2005), *cert. denied sub nom.*, *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080 (2005) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'") (quoting *Manual for Complex Litigation*, Third § 30.42 (1995)); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006); 4 Timothy Eble et al., *Newberg on Class Actions* § 11.41 (Alba Conte & Herbert B. Newberg eds., 4th ed. 2002 & Supp. 2008). Finally, in evaluating the settlement, the court is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact.  *Officers for Justice*, *supra*, 688 F.2d at 625.

The Ninth Circuit has established the following factors to consider in determining whether a settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement [presumably in comparison to comparable cases]; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  *Churchhill Village v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (numbers added); *In re Omnivision Technologies, Inc.*, 2008 WL 123936 (N.D. Cal, January 9, 2008).  Judge Walker in the Northern District, relying upon the *Manual for Complex Litigation*, Fourth § 21.6, has also proposed as a ninth factor "the procedure by which the settlement was arrived at."  *In re Portal, Inc. Securities Litigation*, 2007 WL 4171201 (N.D. Cal. 2007).

Under these standards, the proposed Settlement is fair, reasonable and adequate.

### 1.    The Strength of Plaintiffs' Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." 5 *Moore's Federal Practice* § 23.85[2][b] (Matthew Bender 3d. ed.). However, in balancing these factors, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.* As noted by the Ninth Circuit:

[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the Court of Appeals] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.

*Officers for Justice*, *supra*, 688 F.2d at 625.

Although Plaintiffs believe strongly in the underlying merits of their case, wage and hour cases on behalf of low wage workers can difficult to prove on a class basis especially given the changing and uncertain legal environment.   Further, there are clear uncertainties surrounding Plaintiffs' ability to prove their claims given the unpredictability of a lengthy and complex jury trial.  Given the nature of the claims, this factor weighs in favor of settlement.  Mallison Decl. ¶46.


## 2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Another relevant factor in the present matter is the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000).  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Timothy Eble et al., *Newberg on Class Actions* § 11.41 (Alba Conte & Herbert B. Newberg eds. 4th ed. 2002 & Supp. 2008). As observed in *Oppenlander v. Standard Oil Co. (Ind.)*, 64 F.R.D. 597 (D.Colo. 1974)

The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

64 F.R.D. at 624.  *See also Santos v. Camacho*, 2008 WL 1699448 (D. Guam, April 10, 2008)

Hence, the Court must balance the risks of continued litigation against a certain and immediate recovery for the Plaintiff Class. There are significant risks in continued litigation. There is no guarantee of class certification relating to a myriad of legal and factual issues in this case.  Against all of these uncertainties, an immediate and certain payout amounting to an average of more than $4300 per claimant appears to be a better option than continuing litigation.  *See also Chiaramonte v. Pitney Bowes, Inc.*, 2008 WL 510765 (S.D. Cal. 2008).

Further, the California Supreme Court's upcoming decision in the *Brinker* case could eliminate

1    the ability of Plaintiffs to efficiently litigate these claims.  See Mallison Decl. ¶45.

2                    **3.  The Risk of Maintaining Class Action Status Throughout the Trial**

3            Although Plaintiffs are confident in their abilities to prosecute and manage this case, there is

4    significant risk that the case may not survive a contested class certification proceeding.   This is

5    particularly so given the pending *Brinker* case before the California Supreme Court.

6                            **4.  The Amount Offered in Settlement**

7            Plaintiffs believe that the recovery obtained of $925,000 or more than $4300 per claimant net of

8    all fees and expenses is a good settlement result in a wage and hour case involving low-income dairy

9    workers. While it is not designed to provide full recovery possible, the Ninth Circuit has noted, "the very

10   essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'"

11   *Linney*, *supra*, 151 F.3d at 1242 (citation and internal quotation marks omitted).   As such, there is no

12   suggestion that for a settlement to be approved, the settlement amount has to consist of a full and

13   complete recovery of all claims.

14                **5.     The Extent of Discovery Completed, and the Stage of the Proceedings**

15           In determining the adequacy of the parties' knowledge of the case, it may be relevant to consider

16   the extent of discovery. A settlement following sufficient discovery and genuine arms-length negotiation

17   is presumed fair. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.

18   1996).  Here, Plaintiffs conducted significant discovery ultimately procuring all of the core timekeeping

19   and payroll documents in this case.   Further, dozens of in depth interviews of Class members were

20   conducted.  Plaintiffs' litigation and mediation of this case was informed by a thorough review of these

21   documents and based on those in depth Class member interviews.  Further, by the time the settlement

22   was reached, the litigation had proceeded to a point in which both plaintiffs and defendants "ha[d] a

23   clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec Litig.*, 618

24   F Supp 735, 745 (S.D.N.Y. 1985) *aff'd* 798 F.2d 35 (2d Cir. 1986).

25                            **6.     The Experience and Views of Counsel**

26           The Settlement Agreement was presented to the court after extensive negotiations among the

27   settling parties.  In reviewing the opinions of counsel, "great weight" is accorded to the recommendation

28   of the attorneys. *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).  They are

the ones who are most closely acquainted with the facts of the underlying litigation.  *Id.*  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of correctness applies to a class action settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery) (citing *Manual for Complex Litigation*, Second, § 30.41 (1985), *and Ratner v. Bennett*, No. 92-4701, 1996 WL 243645, *5 (E.D. Pa. May 8, 1996).

Here, the class counsel were in the thick of the litigation and understood the complex weighing of risks and delay inherent in any settlement.  This case, in its various forms, has been in litigation since 2004 – providing counsel with ample opportunity to investigate and evaluate this case. It was Class Counsel's conclusion that the settlement proposed here was a good result and created a certain outcome rather than a contingent claim.  Mallison Decl. ¶45.

### 7.  The Presence of a Governmental Participant

The only presence of a governmental participant is the PAGA claim.  Pursuant to PAGA, the State of California has granted Plaintiff to stand in the shoes of the State of California to enforce these claims on behalf of the state and employees.  As a result, the settlement agreement provides for $25,000 to the State of California – a factor weighing in favor of approval. *Arias v. Sup. Ct* (2009) 46 Cal.4th 969.

### 8.    The Reaction of the Class Members to the Proposed Settlement

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." 5 *Moore's Fed. Practice* § 23.85[2][d] (Matthew Bender 3d ed.).  Class Representative's opinion of the settlement are especially important as "[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class." *Manual for Complex Litigation*, Third, § 30.44 (1995).

13

a.   Class Representative Reaction

The Class Representatives are strongly in support of the settlement.  Mallison Decl. ¶51.  Each of these Class Representatives and their attorneys have an extensive understanding of the merits of this settlement having participated extensively in the strategy, formulation, filing, litigation and negotiation process.  *See* Morales Decl. ¶¶3-4*;* Manuel Cruz Decl. ¶¶3-4; Maria Cruz Decl. ¶¶3-4; Lara Decl. ¶¶3-4; Laveaga Decl. ¶¶3-4; Hernandez Decl. 3-4; Santiago Decl.¶¶ 3-4; Diaz Decl. ¶¶3-4; Leon Decl. ¶¶3-4; and Diaz Decl. ¶¶3-4. Each of these Class Representatives have spent a substantial number of hours during this process keeping themselves informed and participating in the decision making process for example by driving from Bakersfield to Los Angeles to attend mediations.  *See* Morales Decl. ¶¶4*;* Manuel Cruz Decl. ¶4; Maria Cruz Decl. ¶4; Lara Decl. ¶4; Laveaga Decl. ¶4; Hernandez Decl ¶4; Santiago Decl.¶4; Diaz Decl. ¶4; Leon Decl. ¶4; Diaz Decl. ¶4.

b.   Objecting Class Members

The court should carefully weigh the number and nature of objections while keeping in mind that a settlement can be fair even if a large number of class members oppose it. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 174 (5th Cir.1983).   Here the number of objectors is quite objection is **zero** strongly favoring settlement

**9.    The Procedure By Which the Settlement was Arrived Supports the Settlement**

As noted by the Ninth Circuit, the eight listed factors is "by no means an exhaustive list of relevant considerations."  *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982).   As such, in conformance with the Manual for Complex Litigation, Fourth, §21.6, Judge Vaughn Walker has suggested that the procedure by which the settlement was arrived is an important fact in determining whether a settlement should be approved.  Here the settlement was the result of a full day mediation in front of the experienced mediator Robert Coviello.  The settlement is based upon a mediator's proposal. This procedure weighs in favor of approving the settlement.

For all of the above reasons, Final Approval of the Class Action Settlement should be granted.

1

2    **VI.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.**

3            To complete the formal settlement approval process, the Court must satisfy itself that the

4    requirements of Federal Rule of Civil Procedure 23 are met to certify the following class of grape

5    workers

6                   all persons who are or have been jointly employed by Defendant and Golden Grain Farm
                    Labor Contractor as regular non-exempt employees in one or more of the Covered
7                   Positions from March 5, 2000, until Golden Grain Farm Labor Contractor ceased
                    operations on our about January 1, 2005.
8

9    "Covered position" is defined to mean non-exempt Grape field workers.  Settlement, I E.

10           Every requirement of Rule 23 is satisfied with respect to this proposed settlement class.

11   as discussed below, Plaintiffs believe that this court should transform the preliminary class certification

12   into a final certification of the Settlement Class.

13

14           **A.     The Numerosity Requirement Is Met.**

15           Rule 23(a)(1) allows a class action to be maintained if "joinder of all members is impracticable"

16   owing, in primary part, to the large number of people in the proposed class. Fed. R. Civ. P. 23(a)(1); *see*

17   *also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In satisfying this requirement there

18   is no exact numerical cut-off; the specific facts of each case must be examined to determine if

19   impracticability exists. *See, e.g., Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d

20   319 (1980). A finding of numerosity can be demonstrated through common sense assumptions. *In re*

21   *Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 239 (E.D.N.Y. 1998).  In this case, there over 400 low-

22   income, largely mono-lingual Spanish speaking workers.  See Tittle Decl ¶6. The size of this proposed

23   class coupled with limited access these workers have to the court system clearly renders joinder

24   impracticable.

25

26           **B.  The Commonality And Typicality Requirements Are Met.**

27           Rule 23(a)(2) allows a class action to be maintained if "there are questions of law or fact

28   common to the class."  Fed. R. Civ. P. 23(a)(2); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct.

2364, 72 L.Ed.2d 740 (1982).  Rule 23(a)(3) requires that "the claims or defenses of the representative parties [must be]…typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same legal theory as their claims.  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The test requires that the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members."  *Falcon*, 457 U.S. at 156.

Here, the litigation and the settlement revolve around common issues of unpaid minimum wages, overtime, and rest and meal period violations.  Mallison Decl. ¶¶19-31.  There are no difference in the claims of class members other than the amount of damages each endured.  As such, the commonality requirement is met.

The typicality requirement is also met in this case.  Each of the Class Representatives has claims similar and typical of the rest of the Class since they suffered similar injuries and has the same interest in redressing them.  These facts has not changed since the court issued its November 2011 Order preliminarily approving the Class settlement.

**C.  The Named Plaintiffs and Class Counsel Are Adequate Class Representatives**

Rule 23(a)(4) requires that the named plaintiff and proposed Class Counsel be able to "fairly" and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, *supra*, at 1020.

This court has already resolved this issue in its November 2011 order when it appointed class representatives Jose Morales, Manuel Cruz, and Maria Cruz and class counsel.  Nothing has changed since this order was issue that would suggest a basis for altering this conclusion.[5]

---

[5] As noted below, Plaintiff are requesting that this court also provide Arnoldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon and Mirna Diaz with service payments.  The court's decision to provide these payments or not to provide these payments does not alter the fact that Jose Morales, Manuel Cruz, and Maria Cruz are adequate representatives in this case.

1

2      **D.      Certification Under Rule 23(b)(3) Is Appropriate For Settlement Purposes.**

3            In addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), an action must

4      satisfy one of the requirements of Rule 23(b) to be certified for class treatment for settlement purposes.

5      *See Hanlon*, 150 F.3d at 1022; *and In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir.

6      2004).  In particular, the court must find that questions of law or fact common to the members of the

7      class predominate over any questions affecting only individual members and that a class action is

8      superior to other available methods for the fair and efficient adjudication of the controversy.  As noted

9      by this court in its November 10, 2011 order the "parties agree for purposes of the Settlement only that

10     certification of the Class is appropriate under Rule 23(b)(3) because 'questions of law or fact common to

11     the members of the class predominate over any questions affecting only individual members, and . . . a

12     class action is superior to other available methods for the fair adjudication of the controversy.'" (Doc.

13     27-1 at 12).  As a result, this court found that "the conditional class is maintainable under Rule

14     23(b)(3)."

15           Here the issues of Defendants' alleged policy of failing to pay employees for bandejas washing,

16     for morning school, the failure to provide paid rest break periods create common issues that predominate

17     over individual questions.

18           With regard to superiority, Rule 23(b) provides four determining factors.  Fed. R. Civ. P. 23(b).

19     The first factor for consideration is the interest of each member in "individually controlling the

20     prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A).  This factor is more relevant

21     where each class member has suffered sizeable damages or has an emotional stake in the litigation. *See,*

22     *e.g., In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982).  Here, where the

23     monetary damages each plaintiff individually suffered are relatively modest, certifying a class action is

24     favored.  *Id.*  By contrast, the litigation costs would swamp any recovery obtainable in an individual

25     action.

26           The second factor to consider is "the extent and nature of any litigation concerning the

27     controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). The

28     only known litigation concerning the controversy is the cases at issue in this settlement.  This weighs

heavily in favor of class certification in this case.

The third factor to consider is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). However, the context of settlement, the desirability or undesirability of concentrating the litigation of the claims in a particular forum is not significant and is essentially irrelevant. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231 (1997) (stating that where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial). For the purposes of settlement, concentrating litigation in one forum is desirable.

The fourth and final factor is "the difficulties likely to be encountered in the management of a class action." This factor is commonly described as the manageability issue, "encompass[ing] the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). However, for purposes of certifying a class for settlement purposes, this court need not consider this factor. *Amchem*, *supra*, 521 U.S. at 620 (a district judge faced with a request to certify a settlement class "need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)).

These decisions are consistent with the U.S. Supreme Court's recognition in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), that while a proposed settlement class must meet all the requirements of Rule 23, the court need not assess whether the manageability requirement of Rule 23(b)(3) is met because the parties do not propose to litigate the case of a class action. *See Amchem* at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there is no "trial"). Accordingly, recognizing that the parties here propose a class settlement this Court need only inquire whether the proposed Settlement Class is sufficiently cohesive with respect to the relevant factual and legal issues as to make a class wide settlement process fair. *See Amchem*, 521 U.S. at 623; *and Warfarin*, *supra*, 391 F.3d at 528.

As such, the class of nonexempt grape workers should be granted certification.

VII.    **CLASS COUNSELS' REQUESTED FEE AND COSTS ARE REASONABLE**

1.      **The Requested Fee is within the Range of Fees Awarded in this Circuit**

Courts have long recognized the "common fund" or "common benefit'" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund. *See, e.g.*, *Hanlon*, 150 F.3d at 1029; *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," *quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989). The percentage of common fund is particularly appropriate "'when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf.'" *Staton*, 327 F.3d at 972, *quoting Boeing Co.*, 444 U.S. at 478-79.   Here, the Settlement set forth specific lump sum allocations to each Settlement Class, as well as distribution formulas through which each Class Member who submits a valid claim will receive a mathematically ascertainable payment, making the percentage of common fund doctrine appropriate

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952.   However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); See *Activision*, 723 F.Supp. at 1377-78 ("nearly all common fund awards range around 30%");  In Romero v. Producers Dairy Foods, Inc., the court approved an attorneys' fee award that was 33% of the settlement fund in a wage-and-hour case involving allegations of unpaid wages and missed meal and rest breaks. No. 05-0484, 2007 WL 3492841, at *4 (E.D.Cal. Nov.14, 2007). The Romero court noted that "fee awards in class actions average around one-third of the recovery." Id. (quoting Newberg on Class Actions § 14.6 (4th ed.2007)). See also in *In re AIA Indus., Inc. Sec. Litig., No.* 84-2276, 1988 WL 33883 (E.D.Pa. March 31, 1988) (33% of common fund awarded).  Indeed, as described below, this District commonly awards between 30% and 33.33% in farmworker cases.  See e.g. *Vasquez v. Aartman*, E.D. Cal. Case

No. 1:02-CV05624 AWI LJO (30% award); *Baganha v. California Milk Transport*, Case No. 1:01-cv-05729-AWI-LJO (31.25% award); *Randall Willis et al. v. Cal Western Transport*, and *Earl Baron et al. v. Cal Western Transport*, Coordinated Case No. 1:00-cv-05695 (33%); Benitez v. Wilbur, E.D. Cal. Case No. 08-1122 LJO GSA (33.33% award).   Alvarado et al. v.  Rex Nederend, E.D. Cal. Case No. 1:08-cv-01099 OWW DLB (33.33% award).

Class Counsel respectfully requests that the Court approve the fees and costs to be paid in this action. Class Counsel seeks an award of 30% of the common fund or $277,500.  Although this amount exceeds the standard benchmark slightly, it does so because of the extensive work done in this case and because of the difficulties in litigating small farmworker wage and hour class actions.  In particular, the lodestar amounts in this case of $750,300 nearly triple the amount requested.  Mallison Decl. ¶57 ($540,514); Westerman Decl. ¶6 (Milberg lodestar $52,812); Rich Decl. ¶12 (Weinberg's lodestar is $156,974). Further, this case involved substantial motion and discovery work regarding one of the very first applications of the Agricultural Workers Protection Act. Given the risks and involved in class action contingency work, Plaintiffs believe a request of 30% - even though it is above the standard benchmark – is therefore justified.  Class Counsel also requests $15,000 in costs which is less than the actual costs incurred in this case of $18,981.  Mallison Decl. ¶59 ($12,706); Westerman Decl. ¶8 ($2202); Rich Decl. ¶13 ($4073).

## 2.       The Circumstances of This Case Support a 30% Fee Award

When assessing whether the percentage requested is reasonable, courts look to factors such as (a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).  All of these factors support the fee requested in this action.

Class Counsel provided experienced, competent representation and obtained significant results for the Class Members, all while prosecuting the case on a contingency basis, which presented considerable risk for Counsel. As articulated by one Southern District of New York court:

No one expects a lawyer whose compensation is contingent on the success of his services
to charge, when successful, as little as he would charge a client who in advance of the

litigation has agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-398 (S.D.N.Y. 1999) (describing the overwhelming weight of federal authority in favor of the percentage fee method).

### a.    The Results Obtained

First, the recovery in this case is excellent. The individual claims in the case were never huge, as they revolved around defendants' failure to pay class members for portions of days on an intermittent basis and an failure to proper provide rest and meal periods.  Such facts do not generally produce recoveries in the thousands of dollars per claimant.  Yet, the recovery of nearly $925,000 will provide the 119 claimant employees with a net recovery of over $4300 per employee.  This is a very good recovery.

In addition, the excellent results achieved by the Settlement is demonstrated by the absence of any objections to either Settlement or to Class Counsel's request for fees, both of which were described clearly in the Notice. As of the date of this filing approximately 119 employees, or 23% of the class members, submitted claims.  Tittle Decl., ¶¶11.  *No class member has submitted an objection to the Settlement. Id.,* ¶¶12, 13.

### b.    The Risks Involved

Second, there were significant risks in pursuing this.  One of the primary issues involved in this case has to do with the timely provision of rest and meal periods – an issue was taken up before the California Supreme Court in the *Brinker* and *Brinkley* cases.  It is unknown what the outcome of the Supreme Court's decision, but it is possible that decision could seriously damage the recovery in this case.  The Defendants also posed serious defenses to the claims.  And defense counsel demonstrated that they were very able in defense of their client. Counsel invested $750,300 in lodestar and $18,981 in costs in litigating this case with no guarantee or recovery. Mallison Decl. ¶¶57-59; Westerman Decl. ¶¶6-8; Rich Decl. ¶¶12-13.

### c.    The Skill Required

Third, this case required exceptional skill in finding and contacting largely Spanish speaking workers, litigating over cutting edge legal theories surrounding rest and meal periods and issues of proof

in light of the limited recording keeping by Defendant.  In addition to the large number of witness interviews, the case also involved an intensive use and extrapolation from the existing records.  Very few firms have the expertise to be able to effectively and efficiently carry out these tasks.    Class Counsel are extremely experienced in class action wage and hour litigation. *See* Westerman Decl. Ex 3; Mallison Decl. at ¶¶3-17; Rich Decl. ¶¶5-11. Class Counsel's skills in developing an extensive damage analysis along with interviewing numerous class members as witness and convincing Defendant of its litigation exposure under California law were essential to achieving the Settlement. Through their skill and reputation, Class Counsel were able to obtain a settlement that provides an outstanding result for Settlement Class Members.

### d.        The Quality of the Work

Fourth, the quality of the work was very high.  Counsel thoroughly investigated the case, weeding through a myriad of potential claims to find those that could be litigated and developed sophisticated legal claims, such as the clock rounding and on-duty meal period claims, despite the lack of clear caselaw on point.  Plaintiffs' invested a large amount of time at the front end of this litigation in investigation – avoiding expense to the parties and the court of conducting their investigation.

### e.        The Contingent Nature of the Fee and the Financial Burden

Fifth, this case was entirely done on a contingent fee basis against a well represented Defendant. Counsel has received no money from plaintiffs or any other source to litigate this case.  The plaintiffs are all low-wage workers who could never meaningfully contribute to any such expenses.   Plaintiffs' counsel accepted the entire risk of litigation in this case.

Even if class certification was granted over Defendant's opposition, there was no assurance that Plaintiffs would succeed at trial. Despite such challenges, Class Counsel were able to persuade Defendant that it faced significant liability exposure such that it was willing to pay nearly $925,000 to settle Plaintiff's claims.

#### f.      Awards made in similar cases.

Sixth, as noted above, the requested fee is in line with similar wage and hour cases litigated in the Eastern District. See e.g. *Vasquez v. Aartman*, E.D. Cal. Case No. 1:02-CV05624 AWI LJO (30% award); *Baganha v. California Milk Transport*, Case No. 1:01-cv-05729-AWI-LJO (31.25% award); *Randall Willis et al. v. Cal Western Transport*, and *Earl Baron et al. v. Cal Western Transport*, Coordinated Case No. 1:00-cv-05695 (33%); *Benitez v. Wilbur*, E.D. Cal. Case No. 08-1122 LJO GSA (33.33% award).    *Alvarado et al. v. Rex Nederend*, E.D. Cal. Case No. 1:08-cv-01099 OWW DLB (33.33% award).   California wage and hour class action cases are typically litigated in state court and these courts generally reflect fee awards in wage and hour cases in this same range.   *See e.g. Walgreens Overtime Cases*, JCCP No. 4387 (Coordinated Actions) (31% fee award); *Collins v. Aaron Bros.*, LASC No. BC 208856 (33 1/3% fee award); *Gallegos v. Office Depot*, Santa Clara Sup. Ct., Case No. CV 797847 (33 1/3% fee award); *Chalmers v. Electronics Boutique*, LASC Case No. BC306571 (33% of common fund); benchmark and citing cases).   In addition to the above factors, Plaintiffs have been precluded for other employment as a result of this litigation.   Indeed, for Mallison & Martinez the set of grape worker cases simply dominated the firm's practice for several years and was the basis for the opening of their Bakersfield office and the hiring of Mixteco speaking staff.   Class Counsel's commitment to this litigation should not be overlooked in assessing the reasonableness of the fee request.

### B.    Class Counsel's Request for Costs is also Reasonable

In the course of this litigation, Class Counsel had to incur out-of- pocket costs totaling $18,981, and expect to incur modest additional in costs related to the final approval of the Settlement.   *See* Mallison Decl. ¶59 ($12,706); Westerman Decl. ¶8 ($2202); Rich Decl. ¶13 ($4073).   The bulk of the incurred costs included mediator Robert Coviello's fees, expert fees, copy and scanning costs, travel expenses, filing fees, and electronic research. *Id.*   Such costs are appropriate for cost reimbursement in these types of cases. *See*, *e.g.*, *In re United Energy Corp. Sec. Litig.*, 1989 WL 7321 1, at *6 (C.D. Cal. 1989) (*quoting Newberg*, Attorney Fee Awards, § 2.19 (1987)); *see also*, *In re GNC Shareholder Litig.*, 668 F. Supp. 450, 452 (W.D. Pa. 1987).   Plaintiffs believe that these fees are reasonable and typical in

this area.  The actual costs incurred are greater than the estimated $15,000 which was included in the Class Notice and to which no Class Member objected.  As a result, Class Counsel will cap their request for costs at $15,000.  The costs incurred by Class Counsel in this litigation accrued to the benefit of Class Members. In light of the litigation costs that Class Counsel needed to incur to prosecute this action and the positive reaction of Class Members, the request for reimbursement of costs of capped at $15,000 is typical, reasonable and should be granted.

## VIII.   CLASS REPRESENTATIVE'S ENHANCEMENT IS ALSO REASONABLE

Pursuant to the Settlement Plaintiff seeks an enhancement in the amount of $7500 to Named Plaintiffs Jose Morales, Manuel Cruz, and Maria Cruz, and class representatives Arnaldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz Paula Leon, and Mirna Diaz.  Although this court previously held that the former class representatives should not receive enhancement payments, Plaintiffs demonstrate below that such payment are reasonable as this settlement also resolves the class action Case No. 1:06-CV-0028 in which they are current class representatives.  The payments are intended to recognize the time and efforts that the named Plaintiffs spent on behalf of the Class Members and Plaintiffs have submitted evidence substantiating this time and effort.  *See Morales Decl. ¶¶5; Manuel Cruz Decl. ¶5; Maria Cruz Decl. ¶5; Lara Decl. ¶5; Laveaga Decl. ¶5; Hernandez Decl ¶5; Santiago Decl.¶5; Diaz Decl. ¶5; Leon Decl. ¶5; Diaz Decl. ¶5.*

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal quotations and citations omitted); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). In *Coca-Cola*, the Court approved service awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also, e.g., Van Vranken*, 901 F. Supp. at 299 (approving $50,000 participation award to plaintiffs); *Glass v. UBS Financial Services, Inc.*, Case No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each named plaintiff).

1     Plaintiffs' counsel believes that an award of $7500 would conform with recent decisions in the

2 Eastern District with similar facts.  For example, Judge Wanger recently awarded $7500 to five class

3 representatives in a $498,588 class action settlement in Octavio Alvarado et al v. Rex Nederend et at

4 (1:08-cvv-01099).  The court based its award on the following facts:  1) the plaintiff travelled from

5 Bakersfield to Sacramento for mediation sessions, 2) assisted Counsel in investigating and substantiating

6 the claims, 3) assisted in the preparation of the complaint, 4) produced evidenctiary documents to

7 counsel, 5) assisted in the settlement of the litigation, 6) and undertook financial risks in the litigation.

8 $7500 was also recently awarded by Judge Ishii in a $400,000 settlement in Jose Luis Herrera et al v.

9 Manuel Villa Enterprises et al (Case No. 1:10-cv-00271) on similar facts.  Notably, the recovery in this

10 case of $925,000 is substantially higher than the recoveries in both of the above cases.

11     In this case, the named Plaintiff performed the following tasks, among others: (1) travelled from

12 Bakersfield to Los Angeles for a full mediation sessions (2) assisted Counsel in investigating and

13 substantiating the claims alleged in this action including attending numerous meetings; (3) assisted in

14 the preparation of the complaint in this action; (4) produced evidentiary documents to Counsel. *See*

15 Mallison Decl.; Declarations of Jose Morales, Manuel Cruz, and Maria Cruz, and class representatives

16 Arnoldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon, and

17 Mirna Diaz. Moreover, as with any plaintiff who files a civil action, Plaintiffs undertook the financial

18 risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally

19 responsible for the costs awarded in favor of the Defendant. *See*, *e.g.*, *Whiteway v. Fed Ex Kinkos Office*

20 *& Print Services, Inc.*, No. C 08-2320 SBA, 2007 WL 4531783, at **2-4 (N.D. Cal. Dec. 17, 2007).

21 Notably, the releases contained in the proposed settlement agreement are much broader (all claims,

22 known and unknown) than the releases of the class members which are limited to those based on or

23 arising out of the complaint's allegation that employees were improperly compensated). Settlement

24 §III.H.1. The class representatives also sacrificed any additional claims that they may have against the

25 Defendants whether they be related to the claims raised in this case or not.  This sacrifice was a

26 condition of the settlement for defendants.  As such, these rights were sacrificed by the plaintiffs for the

27 benefit of the class.

28

Not a single Class member objected to the enhancement requested on behalf of the named Plaintiff who brought this litigation on their behalf. In the aggregate, the enhancement represents only a small percentage of the total settlement value. The total amount requested for a service award is $75,000 for all the class representatives, which is approximately 8% of the total settlement value.  In light of the work that the named Plaintiff performed on behalf of Class Members spanning nearly 8 years, and the Class Members' response to the Settlement, the requested enhancement is reasonable and appropriate. As noted in previous hearings, it is common in farmworker wage and hour class action cases for enhancement awards of between $5000 and $7500.  If this court believes that $7500 is too high an award, Plaintiffs request that it consider a $5000 per plaintiff enhancement or an amount this court deems appropriate in light of the efforts of these plaintiffs covering a seven year period.

## IX.    CLASS REPRESENTATIVES IN CASE NO. 1:06-CV-0028 ("LARA") SHOULD BE AWARDED ENHANCEMENTS

Arnoldo Lara, Mario LeVeaga, Mirna Diaz, Paula Leon, Raul Diaz, Margarito Santiago, and Alejandra Hernandez ("*Lara* Plaintiffs"), class representatives in the *Lara et al. v. Casimiro, et al.*, Civ. Case No. 1:06-cv-0028-AWI[6], should be awarded plaintiff enhancements because they initiated the class-wide claims in this matter, have participated actively throughout the litigation in both the *Lara* matter and in this related case, and were instrumental in the informal resolution of both the *Lara* matter and this related case.  Indeed, the settlement proposed herein resolves not only the instant case but also the class action and private attorney action against Stevco and Lucich in Case No. 1:06 CV 0028 AWI – a case in which Arnoldo Lara, Mario LeVeaga, Mirna Diaz, Paula Leon, Raul Diaz, Margarito Santiago, and Alejandra Hernandez are currently serving as plaintiffs and putative class representatives.  Indeed, this settlement could just have easily been filed for approval in that case.  It seems unjust that class representative enhancements should be denied to one group of plaintiffs simply based upon the incidental fact of which case the proposed settlement is filed.

---

[6] This case originated in Kern County Superior Court (*Lara, et al. v. Casimiro, et al.*, Case No. S-1500-CV-252445-SPC) as an action against the farm labor contractor, Rogelio A. Casimiro, who later filed in bankruptcy, and against several growers, which included Defendants Stevco, Inc. and Lucich Family Farms (aka FAL, Inc.).

MEMO ISO FINAL. APPRVL. OF CLASS SETTLEMENT
U.S.D.C., E.D. Cal., No. 1:09-CV-0704-AWI-JLT

Indeed, the Lara group has been involved in this case for a substantial amount of time.  From the initiation of their action on March 5, 2005, the *Lara* Plaintiffs have sought recovery of wage and penalties on behalf of all similarly situated workers stemming from the alleged wage and hour violated committed by the now bankrupt farm labor contractor, Defendant Casimiro, and Defendants Stevco, Inc. and FAL, Inc (hereafter collectively referred as "Stevco").  For two years, the Lara Plaintiffs vigorously litigated the claims on behalf of themselves and others against Defendant Casimiro and subsequently against Defendant Stevco in the *Lara* matter, before Defendant Casimiro filed for bankruptcy on October 12, 2005.  Soon thereafter, on November 9, 2005, class members in support of the *Lara* action filed *John Doe, et al. v. D.M. Camp & Sons, et al.*, Case No. 05-cv-01417-FVS-SMS, which was later refilled, in part, as *Morales, et al. v. Stevco, Inc, et al.*, Case No. 1:09-CV-00704-AWI-SMS.

On May 8, 2006, the *Lara* Plaintiffs made a Class Claim ("Claim 20"), which was later amended on June 25, 2007 ("Class Claim 22").  See Claims Registrar for *In re Rogelio A. Casimiro and Belen T. Casimiro*, Case No. 05-bk-19558.  As a result of their class claims, the *Lara* Plaintiffs successfully recovered $75,000, which should be distributed, in part, to the class in this action.  The *Lara* Plaintiffs continued to litigate their class claims against Defendant Stevco by moving to withdraw reference of the adversary proceeding (which was originally removed from state court) from bankruptcy to district court, which as granted on June 5, 2006 by Judge Ishii.  *In re Rogelio A. Casimiro and Belen T. Casimiro*, Case No. Civ-F-06-0028-AWI-SMS (Docket #22).

As is evident from their tenacity, the *Lara* Plaintiffs achieved success in both bankruptcy proceedings and their removed action against Stevco, which deals with the exact same issues in this case.  They participated extensively in discovery proceedings, as set forth below, and were involved in the successful resolution of this and the related cases.  Clearly, the Lara Plaintiffs fulfilled their duties to the class and should be appointed as class representatives.

There are strategic reasons why a separate action was filed in this case and why this case has proceeding in two separate actions.  However, there is no suggestion that the Lara plaintiffs, simply because they participated in one of the two class action litigation proceedings, abandoned or decided against participating as class representatives.  To the contrary, they have held this role in the Lara case (1:06-cv-0028-AWI) and have contributed substantial time and effort in this role.  See *See* Lara Decl.

1  ¶5; Laveaga Decl. ¶5; Hernandez Decl ¶5; Santiago Decl.¶5; Diaz Decl. ¶5; Leon Decl. ¶5; Diaz Decl.

2  ¶5..

3

4  **X.    AFTER THIS COURT GRANTS APPROVAL PLAINTIFFS WILL PETITION JUDGE**

5  **ISHII FOR AN ALLOCATION OF BANKRUPTCY FUNDS**

6           There is an existing class action settlement for $75,000 covering workers for Golden Grain Farm

7  Labor Contractors in Eastern District of California, Bankruptcy Case number 05-19558-B-7.  Golden

8  Grain provided workers covered by the settlement for Lucich/Stevco (1:09-CV-0704) as well as

9  Castlerock (1:09-CV-00701) and El Rancho Farms (1:09-CV-0707).   On March 30, 2009, Judge Ishii

10 issued an "Order Clarifying Effect of September 29, 2008, Order of Judge Lee" in Eastern District Court

11 Case no. 1:07-CV-01218.   This order held that the Bankruptcy Trustee "shall hold the $75,000

12 settlement amount and interest pending further order of this District Court."   The order also stated that

13 "certification of the class of priority creditors represented by Claim No. 22 and appointment of class

14 counsel shall be determined in conjunction with the two pending District Court cases dealing with all of

15 Debtor's former employees."

16          Pursuant to Judge Ishii's order, Plaintiffs request that this court resolve the settlement and class

17 certification issues presented in this motion.  If final approval is granted to this settlement, Plaintiffs will

18 petition Judge Ishii for an order allocating a portion of the $75,000 to be enhance the settlement

19 recovery in this case.[7]

20

21 **XI.    THE FEES OF SIMPLURIS SHOULD BE APPROVED.**

22          The Class Notice provided for fees for the Claims Administrator of up to $20,000.  Plaintiffs

23 request an actual total of $20,000 for Simpluris' fees to be approved in this final approval as they have

24 incurred more than $20,000.  Tittle Decl. ¶18.  The tasks completed by Simpluris is documented in the

25

26          [7] Notably, Plaintiffs do not believe that simultaneous motions before this court and Judge Ishii in the
   bankruptcy proceeding would be efficient.  The bankruptcy issues require a prior decision with regard
27 to class certification and approval of this settlement.  Once that is completed, Plaintiffs' need only
   request that Judge Ishii allocate additional funds to this settlement.
28

Tittle Declaration submitted with this brief. Tittle Decl. ¶¶3-18.

## XII.    THE PAGA PAYMENT SHOULD BE APPROVED

Plaintiffs' complaint contains a California Labor Code Private Attorney General Act Claim pursuant to California Labor Code §§2698 et seq.  This claim provides relief to the State of California. In keeping with common practices, the parties have allocated $25,000 to resolve these claims.  This amount is reasonable and exceeds other PAGA payments made in the wage and hour class action context in the Eastern District.  See e.g. Alvarado et al. v. Rex Nederend (E.D. Cal. Case No. 1:08-cv-01099-OWW-MJS) ($505,058 dairy worker class action settlement allocating $10,000 for PAGA payments to the State of California); Vasquez et al v. Coast Valley Roofing et al (E.D. Cal. Case No. 1:07-CV-00227-OWW-GAS)($300,000 roofing worker class action settlement allocating $10,000 for PAGA payments to the State of California); Ruiz et al v. F. Korbel & bros Inc. (E.D. Cal. Case No. 1:08-CV-00417-LJO-SMS) ($750,000 winery worker class action settlement allocating $10,000 for PAGA payments to the State of California).

## XIII.   CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that the Court grant this motion in its entirety and enter an order: (1) certifying the Settlement Class; (2) granting Final approval of the Settlement; (3) awarding class representative payments of $7500 to Plaintiffs Jose Morales, Manuel Cruz, and Maria Cruz, Arnoldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz Paula Leon, and Mirna Diaz.; (4) awarding attorneys fees of 30% (5) awarding attorneys' costs of $15,000 (6) awarding Simpluris Inc. fees of $20,000; (7) awarding the State of California $25,000 pursuant to the Private Attorney General Act and the Settlement agreement; and (8) granting judgment in the case.

Dated:  March 30, 2012.                    MALLISON & MARTINEZ

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Stan S. Mallison
Stan S. Mallison
Hector R. Martinez
Marco A. Palau
Attorneys for Plaintiffs

MEMO ISO FINAL. APPRVL. OF CLASS SETTLEMENT
U.S.D.C., E.D. Cal., No. 1:09-CV-0704-AWI-JLT