1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | JOSE MORALES, et al., | )   Case No.: 1:09-cv-00704 AWI JLT |
| 12 | Plaintiffs, | )<br>)   FINDINGS AND RECOMMENDATIONS |
| 13 | v. | )   GRANTING IN PART AND DENYING IN PART<br>)   PLAINTIFFS' MOTION FOR FINAL APPROVAL |
| 14 | STEVCO, INC. et al., | )   OF CLASS SETTLEMENT<br>) |
| 15 | Defendants. | )   (Doc. 48)<br>) |
| 16 | | ) |

17        Plaintiffs Jose Morales, Manuel Cruz, and Maria Cruz ("Plaintiffs")[1] filed a motion for final

18    approval of class settlement on March 30, 2012.  (Doc. 48).  By and through this motion, Plaintiffs

19    seek: (1) certification of the settlement class; (2) final approval of the settlement; (3) an award of

20    attorney's fees in the amount of $277,500 to class counsel; (4) an award of costs in the amount of

21    $15,000 to class counsel; (5) an award of service fees in the amount of $7,500 to Plaintiffs; (6) an

22    award of $7,500 to Arnaldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul

23    Diaz, Paula Leon and Mirna Diaz, plaintiffs in a related action; (7) an award of administrator fees in

24    the amount of $20,000; (8) payment of $25,000 to the California Labor Workforce Development

25    ────────────────

26        [1] In the notice of the motion, the parties are identified as "Plaintiffs Arnaldo Lara, Jose Morales, Manuel Cruz,
Maria Cruz, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon and Mirna Diaz." (Doc. 48
27    at 2).  Likewise, these are the "plaintiffs" named in the settlement agreement. (Doc. 63-1 at 2).  However, in the operative
complaint, the named plaintiffs are Jose Morales, Manuel Cruz, and Maria Cruz. (Doc. 1).  Accordingly, the term
28    "Plaintiffs" as used in this Order shall indicate *only* the plaintiffs named in the complaint.

1

1    Agency, and (9) entry of judgment.  (Doc. 48 at 2).  Defendant Stevco Inc., and FAL Inc., doing

2    business as Lucich Farms (collectively, "Defendants") have not opposed the motion.

3        For the following reasons, the Court recommends Plaintiffs' motion for final approval of class

4    settlement be **GRANTED IN PART AND DENIED IN PART**.

5                            **FACTUAL AND PROCEDURAL HISTORY**

6        On March 5, 2004, Arnaldo Lara, Mario Laveaga, Mirna Diaz, Paula Leon, and Raul Diaz,

7    individually and acting for the interests of the general public, initiated an action in the Kern County

8    Superior Court against Rogelio Casimiro, doing business as Golden Grain Farm Labor.[2]  In the Second

9    Amended Complaint filed on September 2, 2005, the following individuals were added as named

10   plaintiffs: Margarito Santiago, Ponciano Santiago, Alejandra Hernandez, Nicolas Paz, Leodegrario

11   Mosqueda, and Angelica Rosales.  In addition, Stevco, Inc., and Lucich Family Farms were named as

12   previously identified "Doe" defendants.  This action was removed to the Bankruptcy Court of the

13   Eastern District of California in December 2005.[3]

14       On September 29, 2008, the Bankruptcy Court approved "Claim 22" filed by the Lara plaintiffs

15   as follows:

16       IT IS HEREBY ORDERED that the Trustee's motion to compromise his objection to
17       Claim #22 is approved in part, and denied in part as follows: The Trustee shall
         segregate $75,000 to be held in full satisfaction of Claim #22. Said monies shall be held
18       in an interest-bearing account pending further order of the court.

19       IT IS FURTHER ORDERED that any party in interest may seek further relief regarding
20       certification of a "claimant class" for Claim #22, appointment of class counsel, and
         distribution of said funds after the district court has fully resolved all class certification
21       issues in the Removed Civil Action.

---

22       [2] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources
23   whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333
     (9th Cir. 1993).  The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and
24   judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987);
     *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also*
25   *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736,
     738 (6th Cir. 1980).  Therefore, judicial notice is taken of the original Complaint and the Second Amended Complaint in
26   *Lara, et al v. Casimiro, et al.*, Case No. S-1500-CV-252445- SPC, of the bankruptcy proceedings in case number 05-
     19558-B-7 and of the Court's own records.

27       [3] **Error! Main Document Only.**At that time, the original non-bankrupt defendants, except for Stevco, Inc., were
28   dismissed from the litigation without prejudice.  (Case no. 1:06-cv-00028 AWI, Doc. 30 at 2).

1    (Case No. 05-1955-B-7 [Doc. 231]).

2         On November 9, 2005, "Doe" plaintiffs initiated an action against table grape growers based in

3    Kern County, including Stevco, Inc.; D.M. Camp & Sons; Marko Zaninovich, Inc.; Sunview

4    Vineyards of California; Guimarra Vineyards Corp.; El Rancho Farms; Castlerock; and FAL Inc.[4]  *See*

5    *Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008).  Plaintiffs alleged that they were

6    former and current employees of the defendants.  *Id.* at 1156.

7         Defendants to the Doe action, including Stevco, filed motions to dismiss the operative

8    complaint, which were granted by the Court on March 31, 2008.  Likewise, the Court granted motions

9    to sever the action, and the Court required the plaintiffs to file amended pleadings against each

10   defendant to effectuate the severance.  On May 29, 2008, Jose Morales, Manuel Cruz, and Marcia

11   Cruz were named as plaintiffs in the Third Amended Complaint against Stevco.  (*Doe*, Doc. 174).  On

12   March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new case number within twenty

13   days to finalize the severance.  (*Doe*, Doc. 237).

14        On April 20, 2009, the named Plaintiffs–Jose Morales, Manuel Cruz, and Marcia Cruz only–

15   filed their complaint against Stevco, Inc., and FAL, Inc., doing business as Lucich Farms.   (Doc. 1 at

16   1).  The complaint alleges:  violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, et

17   seq; failure to pay wages; failure to pay reporting time wages; failure to provide rest and meal periods;

18   failure to pay wages of terminated or resigned employees; knowing and intentional failure to comply

19   with itemized employee wage statement provisions; penalties under Labor Code § 2699, et seq; breach

20   of contract; and violation of unfair competition law.  (*Id.*)  Plaintiffs brought the action "on behalf of

21   Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed,

22   and storage cooler employees employed, or formerly employed, by each of the Defendants within the

23   State of California."  (*Id.* at 8).

24        The parties engaged in mediation with Robert Coviello at Alternative Dispute Resolution

25   Services, Inc., and resolved the matter through the mediator's proposal.  (Doc. 28 at 11).  Thereafter,

26

27

28        [4] For the same reasons set forth in n.2, the Court may take judicial notice of its own records.  Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, case no. 1:05-cv-01417-AWI-SMS.

3

1    Plaintiffs filed a motion for preliminary approval of class settlement on October 14, 2011 (Doc. 27), to

2    which Defendants filed a notice of non-opposition on October 18, 2011 (Doc. 30).

3         The Court held a hearing on the motion for preliminary approval of class settlement on

4    October 31, 2011.  The Court ordered Plaintiffs to provide supplemental briefing on (1) why those

5    who are not named plaintiffs should be appointed as class representatives; (2) the claim for up to

6    $7,500 for each class representative, rather than a lesser amount such as $5,000; (3) whether the

7    settlement administrator should conduct a search for class members in Mexico, or if the search should

8    be confined to the United States; and (4) whether any portion of the $75,000 claim approved in the

9    bankruptcy matter (Case No. 05-19558-B-7) would be included in the settlement, and if so, how.

10   (Doc. 31).  In addition, the Court ordered Plaintiffs to file an amended Notice of Proposed Settlement

11   referring to the $75,000 claim as a potential source that may increase the settlement fund.  On

12   November 7, 2011, Plaintiffs filed the supplemental brief (Doc. 34) with a declaration from the

13   proposed settlement administrator regarding the viability of international address searches (Doc. 33).

14   Also, Plaintiffs amended the Notice of Proposed Settlement to include a notice of a request to allocate

15   the bankruptcy settlement funds.  (Doc. 32).

16        On November 10, 2011, the Court granted preliminary approval of the class settlement.  (Doc.

17   35).  The Court denied the request to appoint Arnaldo Lara, Mario Laveaga, Alejandra Hernandez,

18   Margarito Santiago, Raul Diaz, Paula Leon and Mirna Diaz as class representatives (*id.* at 21-22), and

19   Plaintiffs revised the class notice to indicate they make seek reconsideration of the Court's order (Doc.

20   38).  On November 21, 2011, the Court ordered service of the revised class notice.  (Doc. 39).

21        Due to difficulties in obtaining a reliable mailing list for prospective class members, the parties

22   requested a second amendment to the Class Notice, requiring respondents to provide his or her social

23   security number.  (Doc. 40).  The Court granted the amendment, and ordered the Settlement

24   Administrator to mail the approved Class Notice Packet no later than December 11, 2011.  (Doc. 41 at

25   1).  In addition, the Court ordered the petition for attorneys' fees and for class representative

26   enhancement to be filed no later than February 27, 2012.  (*Id.*).  Class members were to submit claim

27   forms no later than February 15, 2012, and any objections or comments to the Settlement Agreement

28   were to be filed with the Court no later than February 29, 2012.  (*Id.* at 1-2).

4

After a telephonic conference with the Court on March 1, 2012, the parties stipulated to an extension of the claim period to March 18, 2012.  (Docs. 45-46).  In addition, the parties requested the final approval of the class settlement be taken under submission.  (Doc. 46 at 2).  Thereafter, the Court ordered Plaintiffs to file their motion for final approval of class settlement no later than March 30, 2012, took the matter under submission, and vacated the hearing date.  (Doc. 47).  In compliance with the Court's order, Plaintiffs filed their motion and supporting documents on March 30, 2012.  (Docs. 48-63).

## SETTLEMENT TERMS

Pursuant to the proposed settlement ("the Settlement"), the parties[5] agree to a gross settlement amount of $925,000.  (Doc. 63-1 at 7).  Defendants agreed to make payments into an interest bearing account controlled by the Settlement Administrator within thirty days of preliminary approval of class settlement, and the amount has been paid in full.  (*Id.*; Doc. 62 at 9).

## I.    Payment Terms

The settlement fund covers payments to qualified class members with additional compensation to class representatives, payments to class counsel for attorneys' fees and expenses, and payment to the settlement administrator.  (Doc. 62 at 9; Doc. 63-1 at 7-8).  Specifically, the Settlement provides for the following payments from the gross settlement amount:

- •    Each class representative shall receive up to $7,500 each in enhanced payments;

- •    Class counsel will receive no more than 30% of the gross settlement amount for attorneys' fees and $15,000 for expenses;

- •    The California Labor and Workforce Development Agency ("LWDA") shall receive $25,000; and

- •    The Settlement Administrator will receive up to $20,000.

(Doc. 63-1 at 8).  After these payments have been made, the remaining money ("Net Settlement Fund") will be distributed as settlement shares.  (*Id.* at 9).

---

[5] Under the terms of the Settlement, the "parties" include Arnaldo Lara, Jose Morales, Manuel Cruz, Maria Cruz, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon, Mirna Diaz, Stevco, and FAL.  (Doc. 63-1 at 1).

To receive a settlement share from the Net Settlement Fund, a class member was required to submit a timely and valid claim form.  (Doc. 63-1 at 2, 10).  Settlement shares will be calculated on a pro-rata basis with the following formula: (a) the Claimant's total number of Months of Employment during the Class Period;[6] (b) divided by the aggregate number of Months of Employment of All Authorized Claimants;[7] (c) multiplied by the value of the Net Settlement Fund.  (*Id.* at 9).  Thus, the exact amount each receives depended upon how many other class members submitted timely and valid claim forms.  According to the parties, 119 valid claims were made, and if the settlement is approved, "the average claim will be approximately $4300."  (Doc. 62 at 9).

The entire Net Settlement Fund will be distributed, but if any checks are not cashed, that money will be distributed to a charity of Defendants' choice.  (Doc. 63-1 at 15).  No payment will be made to class members who elected to exclude themselves or who failed to submit a timely and valid claim.  (*Id.* at 10).

For tax purposes, 50% of each settlement share will be deemed wages and is subject to applicable payroll tax, withholding and deductions.  (Doc. 63-1 at 9).  In addition, Defendants' share of payroll taxes will be paid from the settlement amount, and the settlement administrator will issue Form W-2s.  (*Id.*)  The remainder of each settlement share is intended to settle claims for interest and other statutory recoveries, for which each claimant will receive a Form 1099.  (*Id.*)

**II.    Releases**

The Settlement provides that Plaintiffs and class members, other than those who elected not to participate in the Settlement, at the time final judgment is entered, shall release Defendants from the claims arising in the class period.  Specifically, the release for class members provides:

> As of the date the Judgment becomes Final, all Class Members who have not filed an exclusion shall hereby fully and finally release Defendants, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, and other service providers, and

---

[6] "Months of Employment" is defined as "the number of calendar months during the Class Period [from March 5, 2000 to January 1, 2005] that the Class Member was an active joint employee of Golden Grain Farm Labor Contractor and Defendants and received a paycheck for such employment . . ." (Settlement § I.W).  Performing one day of work in a calendar month is sufficient to qualify for settlement proceeds for that month.  (*Id.*)

[7] "Authorized Claimant" is defined as "a Class Member who has submitted a timely and valid Claim Form" pursuant to the terms of the settlement.  (Settlement § I.B).

6

assigns, from any and all claims, known and unknown, for or related to all claims based on or arising from the allegations that they were or are improperly compensated during the Class Period under federal, California, or local law (the Class's Released Claims"). The Class's Released Claims include all such claims for alleged unpaid wages, including overtime compensation, missed meal-period and rest-break wages or other statutory recoveries, and interest; costs and attorneys' fees and expenses.  The release for Participating Class Members does not reach any claims not directly related to the wage and hour allegations in the complaint.

(Doc. 63-1 at 6-17).  The release for Plaintiffs provides Defendants are released from "all claims arising from or related to the matters alleged in the Action."  (*Id.* at 16).  Therefore, the release for class representatives is broader than that of the class members.  Defendants mutually release Plaintiffs and all other class members of claims related to this action.  (*Id.* at 17).

## III.    Objections and Opt-Out Procedure

Any class member who wished had an opportunity to object or elect not to participate in the Settlement.  The Notice of Proposed Settlement explained the procedures to "claim a share of the settlement, comment in favor of the settlement, object to the settlement, or elect not to participate in the settlement."  (Doc. 38 at 3).  In addition, the Notice explained claims that were released as part of the settlement.  (*Id.* at 7-8).

## IV.    Service of the Notice Packets and Responses Received

On November 21, 2011, the Court ordered served of the revised class notice.  The Settlement Administrator, Simpluris, Inc. ("Simpluris") has served the class notice and claims forms to the extent possible. (*See generally* Tittle Decl., Doc. 61).  On December 28, 2011, Simpluris mailed Notice Packets in English and Spanish to the 428 class members identified by Defendant.  (Tittle Decl., ¶ 9). In addition, eighty-six individuals who contacted Simpluris or Plaintiffs' counsel because they believed they were class members received Notice Packets from Simpluris.  (*Id.*, ¶ 10).

The United States Postal Service returned 153 Notice Packets as undeliverable.  (Tittle Decl. ¶ 11).  Simpluris attempted to locate current addresses for these individuals, and re-mailed 147 of the Notice Packets.  (*Id.*)  After the additional searches for correct addresses, 83 Notice Packets remained undeliverable.  (*Id.*)  On February 6, 2012, Simpluris mailed a reminder to the 366 class members who had not submitted a Claim Form or an Exclusion Form.  (*Id.*, ¶ 13).  Ultimately, Simpluris received a total of 136 claim forms.  (*Id.*, ¶ 12).

1    According to Krista Tittle, case manager for Simpluris, seventeen of the claims forms were

2    "invalid due to duplicate submission," and three were deficient because the class member failed to

3    sign the form.  (Tittle Decl. ¶¶ 12, 14).  The claims received represent 23.15% of the class members.

4    (*Id.* ¶ 12).  No objections to the Settlement were filed, but four individuals filed requests for exclusion.

5    (*Id.* ¶¶ 16-17).

**APPROVAL OF A CLASS SETTLEMENT**

6

**I.      Legal Standard**

7

8    When parties reach a settlement agreement prior to class certification, the Court has an

9    obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the

10   fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Approval of a

11   class settlement is generally a two-step process.  First, the Court must assess whether a class exists.

12   *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must

13   "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.*

14   (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or

15   reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

16   **II.     Certification of a Class for Settlement**[8]

17   Class certification is governed by the Federal Rules of Civil Procedure, which provide that

18   "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all."  Fed.

19   R. Civ. P. 23(a).  Pursuant to the parties' agreement, the Settlement Class is defined as: "all

20   individuals who are or have been jointly employed by Defendant and Golden Grain Farm Labor

21   Contractor in California as regular non-exempt employees in one or more Covered Positions[9] from

22   March 5, 2000, until Golden Grain Farm Labor Contractor ceased operations on [or] about January 1,

23   2005."  (Doc. 62 at 23).

24   Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a)

25

26

27   [8] Because the class was only conditionally certified upon preliminary approval of the Settlement, final
     certification of the Settlement Class is required.

28   [9] Workers in "covered positions" include non-exempt grape field workers.  (Doc. 63-1 at 2).

8

are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  Plaintiffs argue final class certification should be granted because "[e]very requirement of Rule 23 is satisfied with respect to th[e] proposed settlement class."  (Doc. 62 at 23).

### A.      Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)).  Rule 23(a) requires:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.*  These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

### 1.      Numerosity

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations." *EEOC*, 446 U.S. at 330.  Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Jordan v. county of Los Angeles*, 669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (finding the numerosity requirement was "satisfied solely on the basis of the number of ascertained class members" and listing thirteen cases in which courts certified classes with fewer than 100 members), *vacated on other grounds*, 469 U.S. 810 (1982).  According to Plaintiffs, there were over 400 potential class members.  (Doc. 62 at 23, citing Decl. of Tittle ¶ 6).  Therefore, the numerosity requirement is satisfied.

*///*

9

1

2.      Commonality

2

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

3

Commonality "does not mean merely that [class members] have all suffered a violation of the same

4

pro-vision of law," but "claims must depend upon a common contention." *Dukes*, 131 S. Ct. at 2551.

5

In this case, Plaintiffs contend "the litigation and the settlement revolve around common issues of

6

unpaid minimum wages, overtime, and rest and meal period violations." (Doc. 62 at 24).  In addition,

7

Plaintiffs contend the only difference in the claims of class members is "the amount of damages each

8

endured." (*Id.*)  Notably, "damages calculations alone cannot defeat certification." *Yokoyama v.*

9

*Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *see also Blackie v. Barrack*, 524

10

F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does

11

not defeat class action treatment.").  Based upon the stipulation of the parties, the commonality

12

requirement is satisfied by the Settlement Class.

13

3.      Typicality

14

The typicality requirement demands that the "claims or defenses of the representative parties

15

are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A claim or defense is not

16

required to be identical, but rather "reasonably co-extensive" with those of the absent class members.

17

*Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar

18

injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

19

other class members have been injured by the same course of conduct." *Hanon v. Dataproducts*

20

*Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also*

21

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named

22

plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

23

In the operative complaint, Plaintiffs allege they were employed by Defendants during the

24

relevant time period.  (Doc. 1 at 2-3).  The parties agreed the named plaintiffs and class members were

25

paid under the same pay practices as every other class member.  (Doc. 27-1 at 11).  As a result,

26

Plaintiffs contend each of the class representatives "has claims similar and typical of the rest of the

27

class since they suffered similar injuries," and the same interest in redressing the injuries.  (Doc. 62 at

28

24).  Accordingly, the typicality requirement is satisfied.

4.    Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them.  *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, this prerequisite is satisfied if the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

a.    *Class counsel*

As the Court noted previously, Mr. Mallison and Mr. Martinez have significant experience litigating wage and hour class action cases and in serving as class counsel.  (Doc.  35 at 10).  In addition, Defendant offers no opposition to the adequacy of counsel and, therefore, the Court finds counsel satisfy the adequacy requirements.

b.    *Class representatives*

Plaintiffs seek to appoint Plaintiffs Jose Morales, Manuel Cruz, and Maria Cruz as class representatives and contend "the named plaintiffs . . . are adequate class representatives."  (Doc. 62 at 25).  Plaintiffs' claims are typical of the class members, and there are no noted conflicts between the claims of Plaintiffs and those of the class members.  Therefore, it appears Plaintiffs will fairly and adequately represent the interests of the class.

**B.    Certification of a Class under Rule 23(b)**

As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266.  According to Plaintiffs, "the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3)."  (Doc. 62 at 25).

Rule 23(b)(3) requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  These requirements are generally called the "predominance" and "superiority" requirements.  *See Hanlon*,

150 F.3d at 1022-23; *see also Wal-mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

### 1.    Predominance

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623). The Ninth Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1189 (9th Cir. 2001)).

Plaintiffs contend "the issues of Defendants' alleged policy of failing to pay employees for bandejas washing, for morning school, [and] the failure to provide paid rest break periods create common issues that predominate over individual questions." (Doc. 62 at 25). In addition, the parties agreed common questions predominate over any questions affecting individual class members. (*Id.*)

### 2.    Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Pursuant to Rule 23(b)(3), the Court should consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

### a.    *Class members' interest in individual litigation*

Plaintiffs contend this factor "is more relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation." (Doc. 62 at 25) (citing *In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982)). Because the monetary damages each class member will receive "are relatively modest," Plaintiffs contend the factor weighs in favor of class

1  certification.  (*Id.*)  Notably, there is no evidence the putative class members have an interest in

2  pursuing or controlling individual cases.  Therefore, this factor weighs in favor of class certification.

3  *b.     Other pending litigation*

4  According to Plaintiffs, "[t]he only known litigation concerning the controversy is the cases

5  [sic] at issue in this settlement."[10]  (Doc. 62 at 25).  As a result, this factor weighs in favor of

6  certification.

7  *c.     Desirability of concentrating litigation in one forum*

8  Because common issues predominate on Plaintiffs' class claims, "presentation of the evidence

9  in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial

10  economy."  *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011).

11  Moreover, because the parties have resolved the claims through the Settlement, this factor does not

12  weigh against class certification.

13  *d.     Difficulties in managing a class action*

14  The Supreme Court explained that, in general, this factor "encompasses the whole range of

15  practical problems that may render the class format inappropriate for a particular suit."  *Eisen v.*

16  *Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  However, because the parties have reached a

17  settlement agreement, it does not appear there are any problems with managing the action.  Therefore,

18  this factor weighs in favor of class certification.

19  Because the factors set forth in Rule 23(b) weigh in favor of certification, the Settlement Class

20  is maintainable under Rule 23(b)(3).  Accordingly, the Court recommends Plaintiffs' request to certify

21  the Settlement Class be **GRANTED.**

22  **III.    Approval of the Settlement**

23  Settlement of a class action requires approval of the Court, which may be granted "only after a

24  hearing and on finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P.

25  23(e)(2).  Approval is required to ensure the settlement is consistent with Plaintiffs' fiduciary

26

27  ────────────────

28  [10]The Court cannot determine whether the error in this sentence is grammatical ("is" rather than "are") or it is typographical ("cases" rather than "case").  Consequently, the Court cannot determine if Plaintiffs are claiming that there is more than this case involved in the current controversy.

13

obligations to the class.  *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985).  The Ninth Circuit set forth a number of factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[11] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).  Further, a court should consider whether settlement is "the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).  In reviewing settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute."  *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and citation omitted).

### A.    Strength of Plaintiffs' Case

In this action, there are several disputed claims the fact-finder would be required to determine. Plaintiffs observe, "wage and hour cases on behalf of low wage workers can [be] difficult to prove on a class basis especially given the changing and uncertain legal environment."  (Doc. 62 at 19).  In addition, Plaintiffs contend "there are clear uncertainties surrounding [their] ability to prove their claims given the unpredictability of a lengthy and complex jury trial."  (*Id.*)  Given the uncertainties, this factor weighs in favor of approval of the class settlement.

### B.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  If the settlement were to be rejected, the parties would have to engage in further litigation, including re-certification of the class and discovery on the issue of damages.  Plaintiffs observe "[t]here is no guarantee of class certification relating to a myriad of legal and factual issues in this case."  (Doc. 62

---

[11] This factor does not weigh in the Court's analysis because the government is not a party in this action. However, the Settlement Agreement provides a payment of $25,000 to the California Labor and Workforce Development Agency because the PAGA claim allows Plaintiffs to act as a "private attorney general" on behalf of the State.

at 19).  On the other hand, the settlement provides for the immediate recovery for the class, averaging

more than $4,300 per claimant.  (*Id.*)  Therefore, this factor weighs in favor of approval.

### C.      Maintenance of Class Status throughout the Trial

Plaintiffs acknowledge that even if they demonstrate wage and hour violations by Defendants,

"there is significant risk that the case may not survive a contested class certification proceeding."

(Doc. 62 at 20).  Notably, given the recent ruling of the California Supreme Court in *Brinker*

*Restaurant Corp. v. Superior Court*, class certification for Plaintiffs' claims regarding missed meal

breaks would be more difficult.  *See Brinker*, 2012 Cal. LEXIS 3149, at *64-65 (Apr. 12, 2012)

(holding the employer is required to provide a meal period to employees, but "is not obligated to

police meal breaks and ensure no work thereafter is performed"); *see also Brown v. Federal Express*,

239 F.R.D. 580, 585 (C.D. Cal. 2008) (denying class certification of employees alleging the employers

denied them meal breaks and rest breaks, and failed to give additional pay to employees who missed

meal breaks).  Thus, this factor supports approval of the settlement agreement.

### D.      Amount offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of

absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688

F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, when analyzing the amount offered in

settlement, the Court should examine "the complete package taken as a whole," and the amount is "not

to be judged against a hypothetical or speculative measure of what might have been achieved by the

negotiators."  *Id.* at 625, 628.  Here, the proposed gross settlement amount is $925,000.  Plaintiffs'

counsel asserts this amount "will not put Defendants' operations at risk or endanger the continued

employment of currently employed class members."  (Mallison Decl. ¶ 45, Doc 63 at 16).  Also,

"Plaintiffs believe the recovery obtained of $925,000 or more than $4300 per claimant net of all fees

and expenses is a good settlement result in a wage and hour case involving low-income dairy

workers."[12]  (Doc. 62 at 20).  Based upon the parties agreement that this amount provides adequate

compensation for class members, the Court finds the settlement amount is appropriate, and supports

---

[12] Notably, this action involves *grape* workers, rather than the dairy workers Mallison & Martinez represented in *Alvarado v. Nederend*, Case. No. 1:08-cv-0199-OWW-MJS.

1   approval of the class settlement.

2       **E.**    **Extent of Discovery Completed and Stage of the Proceedings**

3       Defendants litigated the precursor action beginning in 2004 and have litigated this action with

4   the named Plaintiffs since 2005.  In the course of litigation, the parties have "produced a massive

5   amount of documents and data."  (Doc. 63-1 at 6).  Plaintiffs assert they "conducted significant

6   discovery ultimately procuring all of the core timekeeping and payroll documents in this case.

7   Further, dozens of in depth interviews of Class members were conducted.  Plaintiffs' litigation and

8   mediation of this case was informed by a thorough review of these documents and based on those in

9   depth Class member interviews."  (Doc. 62 at 20).  Thus, the parties made an informed decision

10  regarding settlement of the action.  Notably, as early as February 9, 2010, the parties reported they

11  "discussed mediation and are in the process of moving forward with mediation."  (Doc. 18 at 5).

12  According to Plaintiffs, the parties "had a clear view of the strengths and weaknesses of their cases."

13  (*Id.*) (citation omitted).  The parties moved forward with settlement discussions, and resolved the

14  matter with the assistance of a mediator, Mr. Coviello.  (Doc. 62 at 12, 22).  Consequently, this factor

15  supports final approval of the settlement agreement.

16      **F.**    **Experience and Views of Counsel**

17      As addressed above, Class Counsel are experienced in class action litigation.  Based upon the

18  investigation and discovery conducted in the matter, Mr. Mallison believes "the terms set forth in the

19  Settlement Agreement [are] fair, reasonable and adequate," and the settlement is "in the best interest

20  of the putative class members."  (Mallison Decl. ¶ 45, Doc 63 at 15).  Likewise, Defendants and their

21  counsel believe the agreement "reflects a fair, reasonable, and adequate settlement of the [a]ction.

22  (*See* Doc. 63-1 at 18).  Both parties have weighed the strengths and weaknesses of their respective

23  positions and endorse this settlement.  This recommendation of counsel is entitled to significant

24  weight, and weighs in favor of settlement.  *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great

25  weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts

26  of the underlying litigation").

27  ///

28  ///

16

### G.    Reaction of Class Members to Settlement

Significantly, no objections were filed after service of the class notice.  (Doc. 62 at 22).  In addition, Plaintiffs agreed to settle the action, and do not have any objections to the Settlement.  (*See* Morales Decl. ¶ 4, Manuel Cruz Decl. ¶ 4, and Maria Cruz Decl. ¶ 4).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 529.  Therefore, this factor weighs in favor of settlement.

### H.    Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  The parties utilized an impartial mediator, and settlement agreement "is based upon a mediator's proposal."  (Doc. 62 at 22).  Thus, the agreement appears to be is the product of non-collusive conduct.

## IV.    Conclusion

The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement, which appears to be is fair, reasonable, and adequate as required by Rule 23.  Therefore, the Court recommends final approval of the Settlement Agreement be **GRANTED**.

## REQUEST FOR ATTORNEYS FEES AND COSTS[13]

Plaintiffs' counsel seek an award of 30% of the settlement fund equaling $277,500 and $15,000 in costs.  (Doc. 62 at 28).  Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be awarded pursuant to Rule 23(h).  Under the "common fund"

---

[13] On November 10, 2011, the Court ordered: "The petition for attorneys fees and for class representative enhancement SHALL be filed no later than February 10, 2012."  (Doc. 35 at 22).  The parties requested modification of the schedule by which notice, response, and final approval of the settlement had been ordered to occur.  (Doc. 40).  The Court granted the request, and included in its order that "[t]he petition for attorneys fees and for class representative enhancement shall be filed no later than February 27, 2012.  (Doc. 42 at 1).  Plaintiffs' counsel failed to comply with the deadline set forth by the Court, and no requests were made to amend the deadline of February 27, 2012.  Rather, without explanation, Plaintiffs' counsel chose to incorporate their request for attorney fees and class representative enhancement in their motion for final approval of class settlement, filed on March 30, 2012.  (*See* Doc. 48 at 2; Doc. 62 at 27-36).  Despite counsel's failure to comply with the Court's order, the Court will consider the request for attorney fees and incentive payments to class representatives.  However, this **failure to comply with the deadline imposed by the order is not condoned by the Court.**  Plaintiffs and their counsel are cautioned that failure to comply with the Court's orders and deadlines in the future may result in sanctions pursuant to Local Rule 110.

doctrine, attorneys who create a common fund for a class may be awarded their fees and costs from the fund. *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). An award from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense," and as such application of the doctrine is appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co.*, 444 U.S. at 478. Here, the Settlement applies distribution formulas to determine the amount paid to each class member who submitted a valid claim, and application of the common fund doctrine is appropriate.

Notably, "when fees are to come out of the settlement fund, the district court has a fiduciary role for the class." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009). Fees must be "fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 964. Accordingly, the Ninth Circuit instructs that "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963.

## I.      Documentation of hours expended

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007).

Here, Defendant has agreed not to oppose Plaintiffs' fee request. (Doc. 62 at 14-15). Nonetheless, a court "may not uncritically accept a fee request," but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the

1  fee request where "the district court engaged in the 'regrettable practice' of adopting the findings

2  drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically

3  [the] representations concerning the time expended"). "Where the documentation of hours in

4  inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433.

5  **II.      Determination of Fee Award**

6         The Ninth Circuit has determined both a lodestar and percentage of the common fund

7  calculation methods "have [a] place in determining what would be reasonable compensation for

8  creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.

9  1989).  Whether a court applies the lodestar or percentage method, the Ninth Circuit "require[s] only

10  that fee awards in common fund cases be reasonable under the circumstances." *Florida v. Dunne*, 915

11  F.2d 542, 545 (9th Cir. 1990).

12         **A.      Lodestar method**

13         The lodestar method calculates attorney fees by "by multiplying the number of hours

14  reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida v.*

15  *Dunne*, 915 F.2d 542, 545 n. 3 (9th Cir. 1990) (citing *Hensley*, 461 U.S. at 433).  Thus, the first step in

16  determining the lodestar is to determine whether the number of hours expended was reasonable. *Id.* at

17  1119.  Here, Plaintiffs' counsel provide lists of each attorney who worked on this action, the number

18  of hours, and the rate billed by each.  (*See* Doc. 59 at 4; Doc. 63 at 19-20; Doc. 64 at 18).  However,

19  the attorneys do not provide any information regarding the activities undertaken during this time.

20  Consequently, the Court is unable to determine whether the time set forth by each attorney is

21  reasonable or compensable.  Notably, the Ninth Circuit observed, "it is widely recognized that the

22  lodestar method creates incentives for counsel to expend more hours than may be necessary on

23  litigating a case so as to recover a reasonable fee." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050

24  (9th Cir. 2002).

25         Because the information provided by counsel is insufficient to determine whether the hours

26  were reasonable, the Court will not apply the lodestar method. *See Jones v. GN Netcom, Inc.*, 654

27  F.3d 935, 941 (9th Cir. 2011) (observing "[t]he lodestar figure is calculated by multiplying the number

28  of hours the prevailing party reasonably expended on the litigation (*as supported by adequate*

19

1   *documentation*) by a reason-able hourly rate for the region...") (emphasis added).

2   **B.      Percentage of Common Fund**

3       As the name suggests, under this method, "the court makes a fee award on the basis of some

4   percentage of the common fund." *Florida*, 915 F.2d at 545 n. 3.  In the Ninth Circuit, the typical

5   range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25%

6   considered the benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also Hanlon*,

7   150 F.3d at 1029 (observing "[t]his circuit has established 25 % of the common fund as a benchmark

8   award for attorney fees").  The percentage may be adjusted below or above the benchmark "to account

9   for any unusual circumstances," but reasons for adjustment must be clear.  *Paul, Johnson, Alston &*

10  *Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

11      When assessing whether the percentage requested is reasonable, courts may consider a number

12  of factors, including "(1) the results obtained for the class; (2) the risk undertaken by counsel; (3) the

13  complexity of the legal and factual issues; (4) the length of the professional relationship with the

14  client; (5) the market rate; and (6) awards in similar cases." *Romero v. Produces Dairy Foods, Inc.*,

15  2007 U.S. Dist. LEXIS 86270, at *8-9 (E.D. Cal. Nov. 14, 2007) (citing *Vizcaino v. Microsoft Corp.*,

16  290 F.3d 1043, 1048-1050 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

17  1301, 1311 (9th Cir. 1990)).

18                    1.      Results obtained for the class

19      Courts have consistently recognized that the result achieved is a major factor to be considered

20  in making a fee award. *Hensley*, 461 U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir.

21  1994).  Here, the estimated average award exceeding $4,000 per claimant.  However, as noted by the

22  Court in its preliminary approval, Plaintiffs do not provide an estimate of the total liability compared

23  to the settlement amount such that the Court may find the results were "exceptional" to justify an

24  increase above the benchmark.  *See Vizcaino*, 290 F.3d at 1048 (observing "[e]xceptional results are a

25  relevant circumstance" to an adjustment from the benchmark).  Thus, this factor does not weigh in

26  favor of departure from the benchmark of 25%.

27  ///

28  ///

20

2.      Risk undertaken by counsel

It is recognized that the risk of costly litigation and trial is an important factor in determining the fee award.  *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994).  Plaintiffs' counsel contend the request of 30% is justified, in part, due to "the risks . . . involved in class action contingency work."  (Doc. 62 at 38).  In addition, they "invested $750,300 in lodestar and $18,981 in costs in litigating this case with no guarantee o[f] recovery."  (*Id.* at 29).  However, the Ninth Circuit held recently that the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7. (9th Cir. 2011) (observing "whether the fee was fixed or contingent" is "no longer valid" as a factor in evaluating reasonable fees) (citation omitted).

Moreover, each case involves a risk by counsel.  As the Supreme Court explained, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits."  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  In support of their claims that the risks involved justify an award of fees above the benchmark, Plaintiffs contend, "One of the primary issues involved in this case has to do with the timely provision of rest and meal periods—an issue [that] was taken up before the California Supreme Court in the *Brinker* and *Brinkley*[14] cases."  (Doc. 62 at 29).  However, this was just one of the causes of action in this case, which was initiated *by counsel*, and not Plaintiffs.  Although Mr. Mallison asserts his firm "would not have agreed to represent plaintiffs in this case other than on a contingency fee basis unless it would have been confident that it would be awarded a contingency fee approximately 1/3 of the potential recovery if we were successful in our efforts" (Mallison Decl. ¶ 53), he admits also "[t]he firm chose the proposed class representatives" in this action.  (*Id*. ¶ 17).  Thus, there is no evidence that class counsel bore an atypical risk such that the Court should award fees above the benchmark.  Therefore, this factor does not weigh in favor of the request for a higher award.

///

---

[14] Counsel seem to refer to *Brinkley v. Public Storage, Inc.*, 167 Cal. App. 4th 1278 (2008), *review granted*, 87 Cal. Rptr. 3d 674 (2009).  Action in *Brinkley* was "deferred pending consideration and disposition of a related issue in *Brinker* . . ."  *Id.* at 674.

### 3.    Complexity of issues and skill required

The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award.  *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *14-15 (E.D. Cal. Sept. 2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court observed the case involved "complex issues of constitutional law in an area where considerable deference is given to jail officials," and the action "encompassed two categories of class members"); *see also In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award").

Here, Plaintiffs contend this action "required exceptional skill in finding and contacting largely Spanish speaking workers, litigating over cutting edge legal theories surrounding rest and meal periods and issues of proof in light of the limited record[] keeping by Defendant."  (Doc. 62 at 29-30).  However, as noted above, counsel have not provided timesheets such that the Court may determine the amount of time or skill required for "finding and contacting . . . Spanish speaking workers."  *See Bond v. Ferguson Enters.*, 2011 U.S. Dist. LEXIS 70390, at *27 (E.D. Cal. June 30, 2011) (observing "locating and contacting over 500 members of the class, communicating with over 250 class members to ensure they received appropriate forms, [and] obtaining new contact information for some members of the class . . . is entirely administrative work that could be accomplished by paralegals").  Moreover, there is no evidence how the complexity of the issues impacted the time spent on this action, if at all.  Therefore, there is no supporting evidence to support such a departure from the benchmark, and this factor does not weigh in favor of a higher award.

### 4.    Length of professional relationship

Plaintiffs' counsel do not address the length of the professional relationship.  However, Jose Morales, Manuel Cruz, and Marcia Cruz were identified as plaintiffs in the Third Amended Complaint against Stevco in the *Doe* action on May 29, 2008, prior to the Court's severance of the action.  Although counsel have spent several years on this action, this factor does not weigh in favor of departure from the benchmark.  *See Six Mexican Workers*, 904 F.2d at 1311 (the litigation lasted more than a decade, but "[n]othing in this case requires departure from the 25 percent standard award").

22

1        5.      Market Rate

2        Previously, this Court observed, "Prevailing hourly rates in the Eastern District of California

3   are in the $400/hour range." *Bond*, 2011 U.S. Dist. LEXIS 70390, at *30.  The hourly rates sought by

4   attorneys on this action range from $195 to $825 per hour.  (*See* Doc. 59 at 3; Doc. 63 at 19-20; Doc.

5   64 at 18).  Several of the hourly wages far exceed those generally awarded in the Eastern District,

6   though this fact does not determine the matter.  Nonetheless, because the attorneys have not provided

7   information on the services provided or tasks completed, the Court is unable to determine whether the

8   rates requested are reasonable.  Therefore, this factor does not weigh for or against a departure from

9   the benchmark.

10        6.      Awards in similar cases

11       Plaintiffs' counsel contend "the requested fee is in line with similar wage and hour cases

12   litigated in the Eastern District.  (Doc. 62 at 31).  Specifically, Plaintiffs identify the following cases:

13       *Vasquez v. Aartman*, E.D. Cal. Case No. 1:02-CV05624 AWI LJO (30% award);
         *Baganha v. California Milk Transport*, Case No. 1:01-cv-05729-AWI-LJO (31.25%
14       award); *Randall Willis et al. v. Cal Western Transport,* and *Earl Baron et al. v. Cal
         Western Transport*, Coordinated Case No. 1:00-cv-05695 (33%); *Benitez v. Wilbur*,
15       E.D. Cal. Case No. 08-1122 LJO GSA (33.33% award).  *Alvarado et al. v. Rex
         Nederend*, E.D. Cal. Case No. 1:08-cv-01099 OWW DLB (33.33% award).
16

17   (*Id.*)  Further, Plaintiffs' counsel assert similar awards are granted in wage and hour class actions

18   litigated in the state court.  (*Id.*)  Thus, this factor may weigh in favor of departure from the

19   benchmark.

20   **III.    Amount of Fees to be Awarded**

21       Here, counsel fail to provide records documenting the tasks completed and the amount of time

22   spent by counsel.  *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46.  Accordingly, the fee

23   award may be reduced for inadequacies in the request and lack of supporting documentation.  *See*

24   *Hensley*, 461 U.S. at 433.  Moreover, as set forth above, Plaintiffs' counsel have not demonstrated

25   "any unusual circumstances" in this action to justify a departure from the benchmark.  *See Paul,*

26   *Johnson, Alston & Hunt*, 886 F.2d at 272; *see also Six Mexican Workers*, 904 F.2d at 1311 (awarding

27   "the 25 percent standard award" where "the litigation lasted more than 13 years, obtained substantial

28   success, and involved complicated legal and factual issues").  Accordingly, an award of 25 % of the

settlement fund–which amounts to $231,250--is reasonable under the circumstances of this case.  *See Florida*, 915 at 545; *Staton*, 327 F.3d at 964.

### III.     Litigation and Claims Administration Costs

Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54.  Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Here, Plaintiffs' counsel seeks a total reimbursement of $15,000 for costs incurred in the course of this action.  (Doc. 62 at 13).  According to Plaintiffs' counsel, the actual costs incurred exceeded the amount requested:

> In the course of this litigation, Class Counsel had to incur out-of-pocket costs totaling $18,981, and expect to incur modest additional in costs related to the final approval of the Settlement.  *See* ¶59 ($12,706); Westerman Decl. ¶8 ($2202); Rich Decl. ¶13 ($4073).   The bulk of the travel incurred costs included mediator Robert Coviello's fees, expert fees, copy and scanning costs, travel expenses, filing fees, and electronic research.

(*Id.* at 31).  Previously, this Court noted cost "including filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees . . . are routinely reimbursed in these types of cases."  *Alvarado*, 2011 U.S. Dist. LEXIS 52793, at *27-28.   Accordingly, the Court recommends counsel's request for costs in the amount of $15,000 be **GRANTED**.

In addition, Plaintiffs' counsel request $20,000 in fees for Simpluris, which was hired to mail notices to Class Members and distribute payments.  (Doc. 62 at 36).  According to Krista Tittle, Simpluris case manager, "Simpluris' fees and costs are $20,000.00, which includes all work to conclude Simpluris' duties and responsibilities pursuant to the settlement, to calculate the settlement payments, issuance and mailing of settlement payment checks, to do the necessary tax reporting on such payments, [and] answer class member questions." (Tittle Decl. ¶19).  This amount is within the range of previous costs for claims administration awarded in this District. *See, e.g, Bond*, 2011 U.S. Dist. LEXIS 70390 ($18,000 settlement administration fee awarded in wage an hour case involving approximately 550 class members); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 483-84 (E.D. Cal. 2010) ($25,000 settlement administration fee awarded in wage and hour case involving approximately 170 potential class members).  Accordingly, the Court

recommends the request for $20,000 in administration expenses for the settlement administration by Simpluris be **GRANTED**.

### INCENTIVE PAYMENTS

In the Ninth Circuit, a court has discretion to award a class representative a reasonable incentive payment. *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463. Incentive payments for class representatives are not to be given routinely. In *Staton*, the Ninth Circuit observed,

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

*Id.* at 975. In evaluating a request for an enhanced award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Id.* at 977. Further, incentive awards may recognize a plaintiff's "willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Here, Plaintiffs request a class representative incentive payment of $7,500 for each named plaintiffs as well as for the named plaintiffs in *Lara*, including: Arnaldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon, and Mirna Diaz. (Doc. 62 at 32). In the alternative, if the Court finds "that $7500 is too high an award, Plaintiffs request that it consider a $5000 per plaintiff enhancement . . ." *Id.* at 34. Payments to class representatives will be made from the Gross Settlement Amount. *Id.* at 9.

### I.      Class Representatives

Plaintiffs assert the payments to the class representatives "are intended to represent the time and efforts that the named Plaintiffs spent on behalf of the Class Members." (Doc. 62 at 32).

1    Plaintiffs note, "Not a single Class member objected to the enhancement requested on behalf of the

2    named Plaintiff[s] who brought this litigation on their behalf."  *Id.* at 34.

3          **A.      Actions taken to benefit the class**

4          Plaintiffs assert the payments to the class representatives "are intended to represent the time

5    and efforts that the named Plaintiffs spent on behalf of the Class Members."  (Doc. 62 at 32).

6    According to Plaintiffs, they "(1) travelled from Bakersfield to Los Angeles for a full mediation

7    session[] (2) assisted Counsel in investigating and substantiating the claims alleged in this action

8    including attending numerous meetings; (3) assisted in the preparation of the complaint in this action;

9    [and] (4) produced evidentiary documents to Counsel."  *Id.* at 33.  Plaintiffs contend they "undertook

10   the financial risk that, in the event of a judgment in favor of Defendant[s] in this action, they could

11   have been personally responsible for the costs awarded in favor of the Defendant[s]."  *Id.*  In addition,

12   Plaintiffs contend they "sacrificed any additional claims that they may have had against the

13   Defendants whether they be related to the claims raised in the case or not . . . [as] a condition of the

14   settlement," and "these rights were sacrificed by the plaintiffs for the benefit of the class."  *Id.*  The

15   actions taken by Plaintiffs weigh in favor of an incentive payment.

16         **B.      Amount of time expended by class representatives**

17         In their respective declarations, Jose Morales, Manuel Cruz, and Maria Cruz each report they

18   spent exactly 73 hours each on tasks including discussions with counsel and class members, document

19   preparation and review, and mediation.  (See Morales Decl. ¶¶ 3-4, Manuel Cruz Decl. ¶¶ 3-4, Maria

20   Cruz Decl. ¶¶3-4).  Specifically, Plaintiffs report the following tasks and time:

| TASK | TIME SPENT |
|---|---|
| Initial Discussion with Counsel | 5 hours |
| Review of Personnel Records | 3 hours |
| Review of Complaint | 6 hours |
| Consultation with Counsel | 22 hours |
| Meetings & communication with Class Members | 15 hours |
| Composition of Declarations | 4 hours |
| Deposition/ Deposition Preparation | 0 hours |
| Mediation | 12 hours |
| Settlement Agreement | 6 hours |

27   (*Id.*)  Notably, Plaintiffs do not attest that this time was spent only on matters related to this action.

28   Rather, Plaintiffs assert they "actively participated in one of the above-captioned cases as class

representatives," and the declarations include captions for this action and *Lara v. Casimiro*.  (*See, e.g.,* Doc. 51 at 1).  Nevertheless, it appears Plaintiffs spent a number of hours on this action by providing assistance with discovery and attending the mediation sessions.  (*See* Doc. 62 at 33).  Therefore, this factor weighs in favor of incentive payments to Plaintiffs.

### C.     Fears of workplace retaliation

Plaintiffs do not contend they feared retaliation for their connections to this action.  Thus, this factor does not support incentive payments to Plaintiffs.

### D.     Amount to be awarded

Because two of the three factors support an incentive award and Plaintiffs provided assistance to counsel, participated in mediation although it required traveling out of town, and met with class members, an incentive award is appropriate.  *See Rankin v. Am. Greetings, Inc.*, 2011 U.S. Dist. LEXIS 72250, at *5 (E.D. Cal. July 6, 2011) (awarding an incentive award of $5,000 because the amount requested was "reasonably close to the average per class member amount to be received[,] Plaintiff retained counsel, assisted in the investigation, and was an active participant in the full-day mediation").

According to Plaintiffs, "an award of $7500 would conform with recent decisions in the Eastern District with similar facts."  (Doc. 62 at 33).  As examples, Plaintiffs observe class representatives in *Alvarado v. Nederend* and *Herrera v. Manuel Villa Enterprises* were awarded $7,500.  (Doc. 62 at 33) (citing *Alvarado*, 2011 U.S. Dist. LEXIS 52793 (E.D. Cal. Jan. 11, 2011); *Herrera*, Case. No. 1:10-cv-00271.  Plaintiffs note that in *Alvarado*, the Court based its award on the following:

> 1) the plaintiff travelled from Bakersfield to Sacramento for mediation sessions, 2) assisted Counsel in investigating and substantiating the claims, 3) assisted in the preparation of the complaint, 4) produced evidenciary [sic] documents to counsel, 5) assisted in the settlement of the litigation, 6) and undertook financial risks in the litigation.

(Doc. 62 at 33).  Further, Plaintiffs note "the recovery in this case of $925,000 is substantially higher than the recoveries in both of the above cases."  (*Id.*).  Notably, the level participation by the class representatives in *Alvarado* and *Herrera* is comparable to the participation by Plaintiffs in this action.

27

1   Therefore, the Court recommends Plaintiffs' request for incentive payments in the amount of $7,500

2   be **GRANTED**.

3   **II.    *Lara* Plaintiffs**

4          Significantly, Arnaldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul

5   Diaz, Paula Leon, and Mirna Diaz are not named as plaintiffs in this action.  Although named

6   plaintiffs in the precursor action,[15] these individuals are mere class members in the matter now

7   pending before the Court.  The Ninth Circuit explained,

8          [S]ingling out a large group of non-named plaintiff class members for higher payments
           without regard to the strength of their claims eliminates a critical check on the fairness
9          of the settlement for the class as a whole. Such individual class members who have
           actively participated in the litigation are the ones likely to be most aware of the
10         dynamic at the negotiating table, the strength of the class claims, and the costs of
           pursuing the litigation. If they support the settlement agreement *and* are treated equally
11         in that agreement with other class members making similarly strong claims, the
           likelihood that the settlement is forwarding the class's interests to the maximum degree
12         practically possible increases.  If, on the other hand, such members of the class are
           provided with special "incentives" in the settlement agreement, they may be more
13         concerned with maximizing those incentives than with judging the adequacy of the
           settlement as it applies to class members at large.
14

15

16   *Staton*, 327 F.3d at 977.  Thus, the Ninth Circuit has determined only "named plaintiffs, as opposed to

17   designated class members who are not named plaintiffs, are eligible for reasonable incentive

18   payments."  *Id.*  Consequently, Arnaldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito

19   Santiago, Raul Diaz, Paula Leon, and Mirna Diaz are not eligible for incentive payments for their

20   participation in this action.[16]  Accordingly, the Court recommends incentive payments for the *Lara*

21   Plaintiffs be **DENIED**.

22   ///

23

---

24         [15] As Plaintiffs admit, this is a distinct and separate action from *Lara*.  (Doc. 62 at 35).  According to Plaintiffs,
     there were "strategic reasons as to why **a separate action** was filed." (*Id.*) (emphasis added).  That Plaintiffs and the *Lara*
25   plaintiffs chose to settle their claims at the same time does not consolidate the two actions into one.  Notably, the *Lara*
     plaintiffs may, at most, be considered prospective class representatives because a class has not been certified in *Lara*.

26         [16] Plaintiffs contend the *Lara* plaintiffs should be awarded enhancements because they "participated actively
     throughout the litigation . . . , and were instrumental in the informal resolution of both the *Lara* matter and this related
27   case."  (Doc. 62 at 34).  Notably, the Ninth Circuit has explained that "identifiable services rendered to the class directly
     under the supervision of class counsel can be reimbursed . . . from the fees awarded to the attorneys."  *Staton*, 327 F.3d at
28   977 (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)).

## FINDINGS AND RECOMMENDATIONS

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1.      Plaintiffs' motion for final approval of the Settlement Agreement be **GRANTED**;

2.      Plaintiffs' request for certification of the Settlement Class be **GRANTED** and defined as follows:

> All individuals who have been jointly employed by Defendants and Golden Grain Farm Labor Contractor in California as non-exempt farm workers during the period from March 5, 2000 through January 1, 2005.

3.      Plaintiffs' request for incentive payments to Class Representatives Jose Morales, Manuel Cruz, and Maria Cruz be **GRANTED**;

4.      Plaintiffs' requests for incentive payments to Arnaldo Lara, Mario Laveaga, Alejandra Hernandez, Margarito Santiago, Raul Diaz, Paula Leon, and Mirna Diaz be **DENIED**;

5.      Class Counsel's motion for attorneys fees be **GRANTED IN PART** in the amount of $231,250, which is 25% of the gross settlement amount;

6.      Class Counsel's request for costs in the amount of $15,000 be **GRANTED**;

7.      The request for fees for the Settlement Administrator Simpluris in the amount of $20,000 be **GRANTED**; and

8.      The California Labor Code Private Attorney General Act payment to the State of California in the amount of $25,000 be **APPROVED**;

9.      The action be dismissed with prejudice, with each side to bear its own costs and attorneys' fees except as otherwise provided by the Settlement and ordered by the Court; and

10.     The Court retain jurisdiction to consider any further applications arising out of or in connection win the Settlement.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's

1   Findings and Recommendations." The parties are advised failure to file objections within the

2   specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d

3   1153 (9th Cir. 1991).

4

5

6

7   IT IS SO ORDERED.

8       Dated:   __**May 16, 2012**__             _____**/s/ Jennifer L. Thurston**

9                                           UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28